JOHN A. KLEIN, EXECUTOR v. ALICE FRENCH ET AL.

1. EXECUTOR. *Negligence.　Debts due estate.　Debtor's non-residence.*
   An accommodation acceptor's executor, who pays the bill of exchange, and fails to sue the drawer, is not relieved from liability to the heirs for loss of the debt by the fact that the drawer resides in another State.

2. SAME. *Excuse for neglect to sue.　Legal advice.　Suppression of facts.*
   Such executor is not excused from suing by the fact that a lawyer to whom he sent the bill for collection, but who was not notified that the executor had paid it as the acceptor's representative within the statutory period, advised him that the action was barred on its face.

3. SAME. *Conflict of laws.　Suit in foreign jurisdiction.*
   If the domiciliary administrator or executor has possession of a note payable to the decedent or bearer, or if he has paid the decedent's accommodation acceptance of a bill of exchange, he may sue, in his own name, in a foreign jurisdiction.

4. SAME. *Conversion of debt.　Costs and attorney's fee.*
   In such case, suing in his own name is no evidence of conversion, but a rightful exercise of power for the benefit of the estate, from which the executor should be allowed costs and attorney's fees if he fails to maintain the action.

5. SAME. *Improper compromise.　Estoppel to deny power.*
   After the executor has taken possession of such paper and compromised it, without consulting the heirs or notifying them that he has no power to act, he cannot avoid liability for loss occasioned thereby, upon the ground that he could acquire no such power.

6. CONFLICT OF LAWS. *Domiciliary and ancillary administrations.*
   The principle that a grant of letters testamentary or of administration confers no power in a foreign State applies without exception or qualification to ancillary administrations, but as to domiciliary administrations there are recognized exceptions.

7. SAME. *Executor's power over foreign debt.　Suit and payment.*
   The domiciliary administrator, or executor, may receive payment from or sue a debtor residing in a foreign jurisdiction if he voluntarily comes within the State in which the administration is granted.

8. SAME. *Payment in foreign jurisdiction.　Subsequent administration there.*
   A voluntary payment to such executor or administrator by a foreign debtor in a State where there are no debts and no ancillary administration is a good acquittance even if an ancillary administrator is afterwards appointed.

9. SAME.  *Ancillary administration.  Transmission of surplus.*

In the absence of special reasons making proper a distribution by the ancillary administrator, he should transmit the surplus, after paying citizens of the foreign State, to the domiciliary administrator who is entitled thereto.

10. SAME.  *Ownership of debts.  How sued for in foreign jurisdiction.*

The principal administrator is the owner of all debts due the intestate, the evidence of which such as bills and notes are in his possession, wherever the debtor resides, but generally must sue in a foreign jurisdiction by means of ancillary administration.

11. EXECUTOR.  *Renting houses.  Negligence.  Good faith.*

An executor who acts in good faith in fixing the rent of houses belonging to the estate and gets all he can from the tenants, whose places if they vacate he has good ground to apprehend cannot be filled, is not liable for more than he receives, although witnesses twelve years afterwards think he might have obtained a higher rent.

APPEAL AND CROSS-APPEAL from the Chancery Court of Warren County.

Hon. UPTON M. YOUNG, Chancellor.

*Pittman, Pittman & Smith,* for the appellant and cross-appellees.

1. The court erred in charging Klein with the acceptance, for the following reasons.  (1) As executor he was not chargeable with the collection of that claim, and was under no duty in respect to it.  Every grant of administration is confined to the State in which it is made, and confers no power to collect assets in other States.  *Riley* v. *Moseley,* 44 Miss. 37.  A foreign administrator cannot be sued here even on a judgment rendered against him in the State in which he was appointed.  *Winter* v. *Winter,* Walker, 211.  An executor can neither sue nor be sued in his official capacity in the courts of another State.  *Boyd* v. *Lambeth,* 24 Miss. 433 ; *Vaughan* v. *Northup,* 15 Peters, 1 ; 2 Kent Com. 432, notes ; Story Confl. Law, §§ 514, 529.  Payment to an original administrator, as against a foreign administrator subsequently appointed in the debtor's domicile, is not good, and the latter administrator is entitled to recover the debt.  *Vaughn* v. *Barret,* 5 Vt. 333.  A debt, by the death of the creditor, becomes assets in the debtor's place of residence.  *Abbott* v. *Coburn,* 28 Vt. 63 ; *Hilliard* v. *Cox,* 1 Salk. 37 ; s. c. 1 Lord Raym. 562.  A class of

cases, like *Trecothick* v. *Austin*, 4 Mason, 16, and *Doolittle* v. *Lewis*, 7 Johns. Ch. 45, holds that a voluntary payment to a foreign administrator is effectual upon principles of national comity, but no case holds that such administrator has any right to release or compromise the claim. The sum received by Klein in compromise may be a good payment *pro tanto*, but an administrator can be appointed in Kentucky, and sue and recover the balance. 1 Stanton's Rev. Stats. 513, § 3. It is urged that Klein's duty was to take out letters in Kentucky and Louisiana in order to collect this debt. There is no authority for the proposition. On the contrary, in the case of *Satterwhite* v. *Littlefield*, 13 S. & M. 302, the court refused to allow travelling expenses to Georgia to an administrator who went there to collect debts due the estate upon the ground that they were subject to the jurisdiction of the courts of that State where they were situated. It is insisted that Klein should have sued in his own name in the foreign jurisdictions. But by that course he would have subjected himself to costs and attorney's fees for which he would have received no compensation in case of failure, and by the conversion of the claim might have rendered himself liable for the whole of it. *Jenkins* v. *Plombe*, 6 Mod. 92. He was not bound to take any personal risk, but could exercise his option. No ground exists to suspect him of bad faith, but he did with the acceptance what he would have done if it had been his own property. It is by no means clear, however, that Klein could have sued in his own name. *Norcross* v. *Boulton*, 1 Harr. (N. J.) 310; *Stewart* v. *Richey*, 2 Harr. (N. J.), 164. (2) Klein was guilty of no carelessness or neglect of duty in respect to the claim, but made an honest effort to collect it, doing all that a prudent business man could, which is all that the law demands. *Berry* v. *Parkes*, 3 S. & M. 625; *Smith* v. *Hurd*, 8 S. & M. 682; *Bailey* v. *Dilworth*, 10 S. & M. 404; *Anderson* v. *Gregg*, 44 Miss. 170; *Williams* v. *Campbell*, 46 Miss. 57. The lawyer advised the compromise, and Klein assented. It would have been folly for him to study international law, in order to find a reason for acting contrary to his lawyer's advice. Such things cannot be required of a business man who undertakes the administration of an estate.

2. It was proper to overrule the exceptions concerning the rents. The tenants would have left the houses vacant, if the rents had been higher. Klein was very diligent in the matter, and he did the best he could under the circumstances. His only offence is that having tenants, who would pay a reasonable rent, he did not drive them out by charging more, and wait for some one to fill their places. Had he done this, the exceptors would have charged him with the rent which he lost. He was between two fires. Klein is shown to be a good business man in his own affairs; and it appears that he leased the lots in question on the same terms that he made for similar property of his own.

*W. B. Pittman* and *Murray F. Smith*, on the same side, argued the case orally.

*R. S. Buck*, for the appellees and cross-appellant, made an oral argument.

*Buck & Clark*, on the same side.

1. Looking to the exceptions on the subject of rents and the testimony in relation thereto, it appears that the rents of the lots were rapidly reduced after Klein took charge, and underwent changes which are incomprehensible except upon the theory of gross negligence. He allowed the tenants to dictate their own terms, without an effort to secure others or even allowing it to be known that he would lease at a better rent. There is no question that the rental value of the property was twice as much as he received. Tenants could have been obtained who would have paid the proper rent. In fact, the persons in possession would have submitted to it, rather than have vacated. Klein's mismanagement is made sufficiently apparent to entitle the distributees to have him charged with rents lost to them by his indifference and neglect.

2. By his compromise of the White debt, Klein inflicted a loss upon Peale's estate which could have been avoided by reasonable diligence on his part. If an executor releases a debt due his testator, he is chargeable to the amount of the debt whether he received it or not. 3 Williams on Executors, 1896, 1900. While he may avoid the liability by showing that the compromise was for the benefit of the estate, the burden is upon him to prove that fact. *Wyman's Appeal*, 13 N. H.

18. It is a *devastavit* on the executor's part to delay commencing action until the debt is barred, and he is liable, if he subjects the estate to the payment of a security debt which he could have collected from the principal debtor. *Chambers's Appeal,* 11 Penn. St. 436 ; *Tuggle* v. *Gilbert,* 1 Duvall (Ky.) 340. The same principles have been adopted by the courts of this State, from an early day. *Berry* v. *Parkes,* 3 S. & M. 625 ; *Bailey* v. *Dilworth,* 10 S. & M. 404 ; *Gulledge* v. *Berry,* 31 Miss. 346 ; *Banks* v. *Machen,* 40 Miss. 256. The doctrines are approved and the rule as to the burden of proof reiterated in the recent case of *Moffatt* v. *Loughridge,* 51 Miss. 211. Klein having failed to collect the debt, when there was ample property to pay it, is chargeable therewith, unless his excuses for the compromise are good. He says that he was advised that the claim was barred by the Statute of Limitations, and that he could not make White's estate pay it. It was not barred, for the reason that the statute did not begin to run until Klein paid the debt. *Scott* v. *Nichols,* 27 Miss. 94 ; *Henderson* v. *Thornton,* 37 Miss. 448 ; Angell on Lim. § 131. Klein failed to communicate to his counsel the fact which avoided the bar that was apparent on the face of the bill of exchange. Klein assumed the administration of this estate ; he assumed personal liability for its losses, arising from his acts as executor, when it appears that his acts were the result of bad advice, or of assuming as true what was not true, when by ordinary efforts he could have known the truth and avoided the loss. A trustee cannot shift his responsibilities to another. The lawful execution of a trust demands the exercise of the trustee's judgment. If he acts upon the judgment of others, he is bound by the consequences, if they are disastrou; to the trust estate. When a correct understanding of a state of facts is necessary to a due execution of a trust, and the trustee has that understanding, or by reasonable effort can obtain it, he is held responsible for the results of failing to adopt a correct basis of action. There would be no protection for a trust estate, if the trustee could avoid responsibility by showing that his losses were the result of his acting upon the improvident or incorrect advice of others. Applying these principles to this case under the evidence found in the record, Klein

cannot escape responsibility for the loss to Peale's estate, resulting from his compromise of the White debt.

3. The proposition that the compromise is not binding cannot be maintained. The Kentucky statute (1 Stanton's Rev. Stats. p. 513) cited by opposing counsel does not apply. Klein is liable for all loss occasioned to Peale's estate. *Whitney* v. *Cook*, 53 Miss. 551; *Sample* v. *Lipscomb*, 18 Ga. 687; *United States* v. *Child*, 12 Wall. 232. If he sacrificed the interests of the estate by the compromise, he assumed personal liability for the loss occasioned by the act. 3 Williams on Executors, 1799, 1801. Klein had ample power to sue in the domicile of the debtor. The debt was due to him as executor. Debts in respect of the right of property do not follow the person of the debtor, but that of the creditor. *Thorne* v. *Watkins*, 2 Ves. Sr. 35; *Wilkins* v. *Ellett*, 9 Wall. 740; *People* v. *Eastman*, 25 Cal. 603. He could have sued either as executor or in his own name, and his failure to collect the debt was a *devastavit.* *Williams* v. *Moore*, 9 Pick. 432; *Mowry* v. *Adams*, 14 Mass. 327; *Brown* v. *Lewis*, 9 R. I. 497; *Barrett* v. *Barrett*, 8 Greenl. 353; *Gage* v. *Johnson*, 20 Maine, 437. He would not by suing in his own name have been held either for costs or for conversion of the debt, but his expenses would all have been allowed in case of failure out of the other property of Peale's estate. Having assumed the trust, his duty was to protect the estate; and, if ancillary administration was necessary in order to sue in Louisiana or Kentucky, he should have taken out letters there. *Anderson* v. *Gregg*, 44 Miss. 170; *Helme* v. *Sanders*, 3 Hawks (N. C.), 563; *Schultz* v. *Pulver*, 11 Wend. 361.

GEORGE, C. J., delivered the opinion of the court.

Jacob Peale, in his lifetime, accepted the draft of one Z. White for his accommodation. White failed to put Peale in funds to meet the draft, and Peale having made an arrangement for an extension of the time of payment soon afterward died, having by his will appointed the appellant, Klein, his executor, who qualified as such, and on January 1, 1868, paid the bill, as the representative of Peale. Z. White died in the autumn of 1868. He was domiciled, at the time

of his death, in the State of Kentucky. He also owned a valuable plantation in Louisiana, near the city of Vicksburg, where the executor resided. His estate in Kentucky left a considerable surplus for the heirs after the payment of all debts, — larger than the amount of the bill of exchange. His plantation in Louisiana was worth ten thousand dollars, and was incumbered to the amount of three thousand dollars. In 1870, Klein compromised the claim against White, accruing from his having paid the bill of exchange for him, at one thousand dollars. The amount of the bill, when paid by him, was over two thousand eight hundred dollars. Klein filed his final account as executor of Peale, and in it charged himself with the amount he had thus received. The appellees, who are the heirs and distributees of Peale, excepted to the account, insisting that Klein was guilty of a *devastavit* in compromising the claim against White for about one-third of its value, and that he ought to have collected it in full, as it appeared that White was amply able to pay it in his lifetime, and that the assets of his estate, both in Louisiana and Kentucky, were sufficient to pay this after the payment of all other debts. Several objections are made to this claim of the distributees, the principal of which are as follows : First. That Klein's letters-testamentary gave him no power, and imposed on him no duty to collect this debt, as White, the debtor, was a non-resident of the State at the time of Peale's death. Second. That notwithstanding White's estate turned out to be solvent, yet Klein acted in the compromise under the advice of counsel, and was guilty of no negligence.

It is true that the grant of letters-testamentary or of administration is local, confined to the State in which the grant is made, and that such grant confers no power on the executor or administrator in a foreign State. This principle is applied without exception or qualification to ancillary administrators, since they necessarily have no concern with any assets except those within their local jurisdiction, and their sole duty is to collect the assets there, and, after payment of claims in that jurisdiction, to remit the surplus for final distribution to the executor or administrator appointed in the domicile of the decedent. But when applied to executors and administrators

appointed in the domicile of the deceased, whose administration is called the principal one, there are recognized exceptions. Thus it is settled that the principal or domiciliary administrator may receive voluntary payment from, and even sue, a debtor residing in a foreign jurisdiction, if he shall voluntarily come within the State in which he is appointed. Story Confl. of Laws, § 513. It is also settled that, where there are no debts in the jurisdiction where a foreign debtor resides, and no ancillary administration has been granted there, the principal administrator may, in such foreign State, receive a voluntary payment from the debtor, which will be a good acquittance to him, even if an ancillary administrator should be afterwards appointed. *Wilkins* v. *Ellett*, 9 Wall. 740; *Doolittle* v. *Lewis*, 7 Johns. Ch. 45; *Trecothick* v. *Austin*, 4 Mason, 16. And it is further settled that, if the principal administrator have possession of a note payable to his intestate or bearer, he may, as the lawful holder and bearer of such note, sue on it in a foreign jurisdiction. Story Confl. Laws, § 517.

The principal administrator is entitled to have the surplus in the hands of an ancillary administrator transmitted to him for the payment of debts; and such surplus will also be generally transmitted to the principal administrator for distribution among the legatees; and this course is generally pursued, unless there is some special reason making it just and proper for this distribution to be made by the ancillary administrator. Wharton Int. Law, § 619; *Garland* v. *Rowan*, 2 S. & M. 617. Accordingly it is held that the principal administrator is the owner of all the debts due to the intestate, wherever the debtor may reside, as such debts are now recognized as following the person of the creditor, and have locality at his domicile; and especially are this ownership and title of the principal administrator recognized as to all debts, the evidences of which, as bonds, bills and notes, come to his possession in the place of the domicile of the intestate. The Supreme Court of the United States, in *Wilkins* v. *Ellett*, 9 Wall. 740, after stating that the personal estate of the deceased is to be regarded, for the purposes of succession and distribution, wherever situated, as having no other locality than that of his domicile, said: " The original administrator, therefore, with letters taken out

at the place of the domicile, is invested with the title to all the personal property of the deceased for the purpose of collecting the effects of the estate, paying the debts, and making distribution of the residue, according to the law of the place or the directions of the will, as the case may be." This principle seems also to be recognized in *Garland* v. *Rowan*, 2 S. & M. 617, and in *Satterwhite* v. *Littlefield*, 13 S. & M. 302. Certainly, for all purposes of taxation and the exercise of governmental authority, the debts have the locality of the creditor, and not of the debtor. The creditor may be taxed on his foreign debts where he resides, and he cannot be taxed for them in the jurisdiction of the debtor. *Davenport* v. *Mississippi and Missouri Railroad Co.*, 12 Iowa, 539; *People* v. *Eastman*, 25 Cal. 603; *State Tax on Foreign-held Bonds*, 15 Wall. 300.

It thus appearing that, at least as to debts due the decedent, the securities for which are in possession of his principal and original administrator, the title and ownership are in the latter, with the right to receive payment and give acquittances therefor, it follows that he would be held responsible for their due administration, as in case of domestic debts, if there were no other obstacle to their collection than exists in relation to domestic debts. Such an obstacle does, however, exist, and to the extent that it is insurmountable by the use of ordinary and reasonable diligence by the administrator, it will furnish a legal excuse for a failure to collect a foreign debt. This obstacle is the want of power in the principal administrator to sue for and recover the debt in the foreign State. For reasons of policy, recognized in the comity of nations, each State in which a debtor of a foreign decedent may reside, generally, though not universally, refuses aid through its courts to a foreign administrator to collect the debt, because it will not allow the transmission of the property within its limits to a foreign State, until the claims of its own citizens on it have been discharged. Hence, every State has usually required an ancillary administration within its own jurisdiction, before it will afford aid through its courts to the collection of the debts due to foreign decedents; so that the creditors within that State may be first satisfied, before the transmission of the assets to the place

of the principal administration; but it so far recognizes the rights of the principal administrator, as to give to him or his nominee the appointment of ancillary administrator, and to direct the surplus, after paying its own citizens, to be transmitted to the place of the principal administration.

The principal administrator's duties and responsibilities in reference to a foreign debt, the evidence of which he has in his possession, can be easily ascertained from the foregoing principles. He has the title and the possession; he has the right to receive voluntary payment; he has the right to apply for and receive the appointment of ancillary administration, or to secure it to his nominee. He cannot, therefore, hold the evidence of debt and do nothing; for this would be most unjust to the distributees, and would result in a loss of the debt to them, unless voluntary payment was made. He should therefore take such reasonable steps as are within his power to collect the debt. He should, except where the debt is too small to authorize the expense, attempt, in good faith, either to secure the appointment of ancillary administrator for himself, or for some discreet and suitable person to be selected by him. Should he be unable to comply with the terms — as giving security — required for the appointment, that would excuse him from making application for a personal appointment. He should then take proper steps to have another appointed, and turn over to him the collection of the debt. He will be held to be excused only when he has shown that he has done all that was reasonably within his power to secure the collection of the debt. He has not done his duty when, as in this case, he has merely transmitted the claim to a lawyer in the foreign State for collection, when he has been apprised in ample time that no steps have been taken for collection by his attorney; nor has he done his duty when he accepts as a compromise whatever sum the debtor or his legal representative shall voluntarily pay. *Schultz* v. *Pulver*, 11 Wend. 361; *Helme* v. *Sanders*, 3 Hawks (N. C.), 563. But in this case the executor was without the excuse of a want of power to sue. He could have sued in a foreign State in his own name. Peale was not a creditor of White at the time of the former's death. He was merely his surety. The relation of cred-

itor and debtor was not created till Jan. 1, 1868, when Klein, as executor, paid the acceptance.   In such a case, the rule is that the administrator may sue the principal, either in his own name or as administrator.  *Mowry* v. *Adams*, 14 Mass. 327 ; *Williams* v. *Moore*, 9 Pick. 432; 2 Williams on Executors, 878. Having this right, he was without excuse in not bringing suit against White either in Louisiana or Kentucky.   It is urged, however, in opposition to this view, that, if Klein had sued in his own name, it would be evidence of a conversion of the debt to his own use, and that he would not have been entitled to costs and attorney's fees in case he failed to collect, and might also have been made responsible for the whole debt.   If this be conceded to be the rule when suit is brought against a domestic debtor by an administrator in his individual right, and when he might have sued in his representative capacity, it would not apply to a suit against a foreign debtor. In such a case the administrator would have no choice.  He must sue in his own name, or not at all.   It would be the clear duty of the court, to which he was responsible for his administration, to hold that, having no choice but to sue in his own name, suing in that way was no evidence of a conversion, but a rightful exercise of his powers for the benefit of the estate.

It also appears that Klein acted on the theory that it was his duty to collect the claim, and that he either had the right to sue, or could easily have acquired it.   The ground on which he rests the compromise, as shown by his deposition, is almost exclusively that he was advised that the claim was barred by the Statute of Limitations at the time the compromise was made. He took charge of the claim, and placed it in the hands of a lawyer for collection, and refused at one time to accept a compromise.   He assumed to exercise the duty of an executor rightfully having the power to enforce collection, and did nothing to notify the heirs and distributees of Peale that he would not discharge fully the trust thus assumed.   He made the compromise and surrendered the claim without consulting them, or without even having given them notice that he did not possess the power to collect, or did not intend to acquire that power.   Under these circumstances, he will not be heard

to urge, as an excuse for negligence in the business thus assumed by him, that he had not the requisite power to act, and could not acquire it.

It is clear, from the evidence, that Klein might have collected the claim if he had sued, or caused suit to be brought; and that the compromise was wholly unnecessary. He claims, however, that he is exonerated, because he acted under the advice of counsel. It appears that counsel did advise him to compromise, upon the ground that the claim was barred by the Statute of Limitations of Louisiana. The attorney, under whose advice he acted, stated in his deposition that he had nothing placed in his hands, except the bill of exchange drawn by White, and accepted by Peale; and that, by the law of Louisiana, if nothing more appeared than what was shown on the face of the bill, the claim was barred. The attorney was not advised that Peale was an accommodation acceptor for White, and that his executor had paid the draft for White's benefit. He states that the claim thus arising from the payment was not barred, and that he would not have given the advice if he had known these facts. They were well known to Klein, and he was guilty of inexcusable negligence in not communicating them to his attorney. It was his duty to communicate all the material facts to his attorney, if he desired to protect himself by his advice. This exception to his final account was therefore properly sustained.

The exceptions to the account of Klein, that he did not receive as much rent for the store-house and dwelling of Peale as he ought, are not sustained by the evidence, and were properly overruled. It is not shown that Klein, who is proved to be a good business man, and interested largely at the time in real estate in Vicksburg, did not act in good faith in the prices fixed by him for the rent of these houses. Witnesses now think that in 1867 and 1868 he might have received more; but it is shown clearly that Klein got all he could from the tenants, and that there was reasonable ground for the apprehension which he felt, that if he turned out these tenants the property might be vacant. We see nothing in his conduct in this matter which ought to subject him to the payment of a larger sum than he received.        *Decree affirmed.*