CHARLES J. HALPER *vs.* JENNIE H. WOLFF.

Third Judicial District, Bridgeport, October Term, 1909.

BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, JS.

A testamentary trustee who has conveyed the trust property to the beneficiary pursuant to the terms of the will and the order of the Court of Probate, and thereby terminated the trust, has thereafter the same right to purchase the property of the latter that a stranger would have.

A will provided that the income of the trust property should be used for the support of the plaintiff until he became thirty-five, and empowered the trustees, if then satisfied upon investigation that the plaintiff's habits for the last three years had been such that the property could be safely entrusted to him, to sign and file a certificate to that effect in the Court of Probate, and thereupon to transfer the property to him. The trustees complied with these provisions, and upon their application, the Court of Probate, having found the statements of the certificate to be true, terminated the trust and directed a transfer of the trust property to the plaintiff. *Held:*—

1. That the mere fact that the defendant, one of the trustees, knew when she signed the certificate that the plaintiff had used intoxicating liquors to excess, did not render the proceedings for terminating the trust void.

2. That the Court of Probate, under General Statutes, § 191, had power to make the order terminating the trust and directing a transfer of the trust property to the plaintiff; and that the defendant, in complying therewith, was protected under General Statutes, § 204.

3. That for aught that appeared the plaintiff was competent to exchange the property so received by him for shares of the capital stock in a millinery corporation owned by the defendant and in which the plaintiff was also a stockholder, and that upon the facts found the defendant had acted in good faith and paid an adequate consideration for the property acquired by her.

Having testified that the merchandise of the corporation whose stock he took in exchange was worth not more than $4,000, the plaintiff was asked on cross-examination what amount of insurance the corporation took out on it. *Held* that this inquiry was admissible as it might tend to show that the plaintiff then believed the property was worth much more.

The defendant was afterward allowed to show just what the amount of the insurance was. *Held* that whether this evidence was strictly admissible or not, its reception was not a sufficient reason for granting a new trial.

Halper *v.* Wolff.

An advertising specialist and business expert who has made a study of the situation and of the object to be accomplished, and has examined a stock of merchandise and conducted a sale of it, is sufficiently qualified to give his opinion of its value.

Argued November 2d—decided December 17th, 1909.

ACTION for an accounting for the profits made by a testamentary trustee from the purchase of the trust property of the beneficiary, and judgment for the amount found due thereon, brought to and tried by the Superior Court in New Haven County, *Shumway, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff. *No error.*

*Edward A. Harriman,* for the appellant (plaintiff).

*Edward H. Rogers* and *Frank Kenna,* for the appellee (defendant).

HALL, J.   The plaintiff is the son of Samuel Halper, who died testate May 22d, 1900.   The defendant is the widow of Samuel Halper and the stepmother of the plaintiff.

By the terms of his will Samuel Halper gave to the defendant and to his daughter Frances Halper, afterward Mrs. Jacobs, and to one Benno Spitz, a one-fourth part of his residuary estate to hold for the following described uses and purposes: "To control and manage said property and to collect the rents, profits, interest and income and out of the same to provide for the proper support so far as said income will allow of my son Charles J. Halper until he shall arrive at the age of thirty-five years; and on his reaching the age of thirty-five years I authorize and direct my said trustees to make an investigation into the conduct, character and habits of said Charles J. Halper and if, on such inquiry and investigation, all of said trustees shall be satisfied that the last three years of the life of said Charles

J. Halper have been passed in habits of sobriety, industry and economy, and that his business habits are such that said trust funds held for his benefit will be likely to be safely kept by him, then on said trustees making a certificate in writing and filing the same in the court having jurisdiction of my estate, I authorize and direct my said trustees to transfer, convey, assign and pay over to said Charles J. Halper said trust estate so held. To have and to hold the same to him and his heirs and assigns forever."

The complaint alleges these facts: "8. At or about the same time [when plaintiff became thirty-five years of age], the defendant conceived the idea that she might be able to obtain the plaintiff's interest in his father's estate at far less than its value, by taking advantage of the necessities of the plaintiff, and deliberately planned to secure the plaintiff's said interest from the plaintiff at a small fraction of its real value. 9. In pursuance of said plan, the defendant caused The Samuel Halper Company, which was then controlled by her, to discharge the plaintiff from its employ without cause, thereby depriving the plaintiff of his principal means of support, and the defendant further refused to join in issuing the certificate required by said Samuel Halper under the fourth clause of said will, to enable the plaintiff to receive the estate therein given to him, unless the plaintiff would convey to the defendant his interest in such estate upon her own terms as hereinafter set forth. 10. By means of the conduct of the defendant, as aforesaid, in depriving the plaintiff of his principal means of support in refusing to join in issuing to him the aforesaid certificate necessary to enable him to procure the aforesaid estate from said trustees, the defendant forced the plaintiff in order to obtain the aforesaid trust estate to which the plaintiff was then entitled, and which was then necessary for the plaintiff to have in order to support himself and his wife, to agree that if the defendant would join in issuing the aforesaid certificate, the

plaintiff would transfer to the defendant his entire interest in said trust estate for the sum of three thousand dollars in cash and two hundred and twelve shares of the stock of said Samuel Halper Company, and in pursuance of said agreement the defendant joined in issuing the aforesaid certificate entitling the plaintiff to said trust estate, and the plaintiff conveyed his interest in said trust estate to the defendant on or about March 1, 1907. 11. The plaintiff's interest in the trust estate then conveyed by the plaintiff to the defendant was actually worth the sum of ten thousand dollars, and the stock in The Samuel Halper Company received by him in exchange was worthless. . . . 12. The plaintiff is a layman and was ignorant of his legal rights in the matter, and entered into the foregoing agreement, and executed the said conveyance of his interest, in ignorance of his rights and on account of the necessity of his obtaining money to live upon, which he could not procure elsewhere except by securing the principal of said trust estate."

Upon the issues framed by the answer denying these allegations, the court found these facts, in substance:—

When the plaintiff became thirty-five years of age, on October 7th, 1906, he was employed at $25 a week by the Samuel Halper Company, a corporation which had been formed for the purpose of carrying on the business theretofore conducted by a copartnership composed of the plaintiff and the defendant. The capital stock of this corporation was $10,500, divided into four hundred and twenty shares of the par value of $25 each, of which the plaintiff owned two hundred and eight, and the defendant two hundred and ten shares, and Mr. Wolff, the defendant's husband, and the defendant's daughter, each owned one share.

On February 27th, 1907, the plaintiff in the meantime having married, the defendant, at plaintiff's request, signed a certificate, as required by the will, that the plaintiff was capable of receiving said trust estate, the plaintiff's

sister Frances having previously signed said certificate, and said Benno Spitz having resigned his trusteeship; and thereafter, on said 27th day of February, the Court of Probate found the statements made in said certificate to be true, and ordered the trust terminated and the trust property transferred to the plaintiff.

On the 28th of February, 1907, Frances Halper Jacobs and the defendant executed a conveyance of the trust estate to the plaintiff, and on the 2d day of March, 1907, the plaintiff executed a conveyance of it to the defendant and received therefor $3,000 in cash and the two hundred and twelve shares, which the defendant controlled, of the stock of the Samuel Halper Company, in accordance with an agreement previously made between the plaintiff and defendant. These two deeds were exchanged and recorded March 4th, 1907.

At the time of said sale the Samuel Halper Company was solvent, and had assets exceeding its liabilities of at least the value of $9,000, and had continued solvent and did a good business until the spring of 1908, when its liabilities began to increase, and in August of that year it became bankrupt.

Further, respecting the fairness of said transaction, the trial court says: "The proposition for the sale by the plaintiff to the defendant of the plaintiff's interest in said trust estate was made in the first instance by the plaintiff, and was made voluntarily and at his own suggestion, and after having been fully advised of his legal rights by his lawyer, and said sale was fairly and honestly made, and was without any unfair advantage on the part of the defendant, and was consummated after it had been urged upon the defendant by the plaintiff for more than a month."

Among his reasons of appeal from the judgment rendered in favor of the defendant, the plaintiff asserts that the court erred in overruling these claims of law made by him: 1. That a fiduciary relation of trustee and *cestui que*

*trust* existed between the parties at the time of the defendant's sale of her stock to the plaintiff. 2. That the burden of proof was upon the defendant to prove the entire fairness of the transaction. 3. That upon the facts found the defendant failed to sustain this burden of proof. 4. That the evidence in the case is insufficient to sustain the burden of proof. 5. That by the purchase from the plaintiff of his interest in the trust estate the defendant became a trustee for the plaintiff, and was bound to account for the difference between the value of the property received from the plaintiff and the consideration given therefor.

If the trust under the will was terminated by the conveyance of the trust property to the plaintiff, by the deed of Frances Halper (Jacobs) and the defendant, of February 28th, 1907, the trial court rightly held that the relation of trustee and *cestui que trust* did not exist at the time of the defendant's sale of her stock. The defendant did not transfer her stock and pay the $3,000, and obtain title to what had been trust property, until after the plaintiff had acquired such title to the trust property as he took under the deed of February 28th, 1907, from the defendant and Mrs. Jacobs. If in the discharge of their duties as trustees the defendant and Mrs. Jacobs, by the deed of February 28th, 1907, conveyed the trust property to the plaintiff, the defendant had thereafter the same right to purchase it of the plaintiff as any other person had. The will provided for a transfer of the trust property to the plaintiff when he should reach the age of thirty-five years, and that the trustees should file in the Court of Probate a certificate that his character and habits were such that the trust fund would be likely to be safely kept by him. When, after he became thirty-five years of age, the plaintiff should receive the trust property, was left largely to the discretion of the trustees, who in 1907 were his sister and his stepmother. They filed the certificate in the Court of Probate February 27th, 1907, and that court on that day

ordered the termination of the trust, and directed the transfer of the trust property to the plaintiff. The mere fact that when the defendant signed the same certificate on February 27th, 1907, which had been signed by Mrs. Jacobs when the plaintiff became thirty-five years of age, she knew that the plaintiff had used intoxicating liquors to excess, did not render the proceedings for terminating the trust void; nor does the plaintiff so claim. In fact, he seems to claim that the defendant should have signed the certificate when Mrs. Jacobs did, and that the defendant refused to sign it to accomplish her alleged fraudulent purpose of obtaining the trust property herself for much less than its value.

The facts show that the application to the Court of Probate was made in good faith, and that it was a proper one to be made under the provisions of the will. Under § 191 of the General Statutes the Court of Probate had power to make the order terminating the trust and directing the transfer of the trust property to the plaintiff. To that extent, under § 204 of the General Statutes, the defendant is protected by such order.

The testamentary trust having terminated, no new trust was created by the conveyance by the plaintiff to the defendant of what had been, but was no longer, trust property. From anything that appears in this case the plaintiff was competent to make the conveyance to the defendant as he did. The facts found show that the defendant in making the purchase and exchange acted in good faith, and with the intention of benefiting the plaintiff, and that she paid an adequate consideration for the property she received.

The plaintiff having testified on direct examination that the value of the stock of merchandise of the Samuel Halper Company on hand at the time he bought the defendant's stock was not over $4,000, the defendant was permitted, against plaintiff's objection, to ask him on

cross-examination how much insurance he carried. The witness answered, it might have been $6,000 or $7,000, I do not remember just how much. The defendant, against plaintiff's objection, was afterward permitted, for the purpose of proving the value of the merchandise, to testify that the company carried from $7,000 to $8,000 insurance. The plaintiff's answer was admissible as tending to show that when he procured his insurance he thought his property might be worth much more than $4,000. The testimony of the defendant to practically the same fact, as to the insurance to which the plaintiff had testified, whether strictly admissible or not, would not be a sufficient ground for granting a new trial.

The testimony of the witness Dooley that he was an advertising specialist and business expert; that he made a study of the situation and the object to be accomplished; and that he had examined this stock at the plaintiff's request, and conducted a sale of it, sufficiently qualified him to state his opinion of its value.

There is no error.

In this opinion the other judges concurred.