MARGUERITE MILLER, CONSERVATRIX *v.* PHOENIX STATE
BANK AND TRUST COMPANY

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and TROLAND, Js.

Argued April 4—decided May 22, 1951

*T. Holmes Bracken,* with whom was *Walter W.
Downs,* for the appellant (plaintiff).

*Horace E. Rockwell,* with whom was *J. Harold Williams,* for the appellee (defendant).

JENNINGS, J. The basic question may be stated as follows: Is it essential that a foreign guardian comply with the provisions of General Statutes, § 6862, printed in the footnote,[1] in order to give a valid release of her ward's claim against a Connecticut fiduciary? The statute in force at the time of these transactions was § 4806 of the Revision of 1930 but for convenience we use § 6862 of the Revision of 1949, which is identical. The facts are undisputed.

The defendant was a cotrustee under the will of Charles F. Taylor. His widow, the life tenant, died December 10, 1935. The will provided that on her death the principal was to be divided among the testator's children and the issue of any deceased chil-

---

[1] Sec. 6862. REMOVAL BY FOREIGN GUARDIAN OF WARD'S PERSONAL PROPERTY. When any personal property in this state belongs to any person residing out of this state who has a guardian, trustee or other legal custodian of his estate, appointed under the laws of the place of his residence, such custodian may apply in writing to the court of probate of the district in which the principal part of such estate in this state is, alleging that he has been legally appointed such custodian in the jurisdiction in which the person to whom such estate belongs resides, that he has given bond and security therein in an amount double the value of all the estate of such person and that a removal of such estate from this state will not conflict with the terms and limitations by which such person owns it. If such court shall find such allegations true and the applicant shall file in such court for record an exemplified copy of the record of the court by which he was appointed, it may, after a hearing upon such application, upon such notice as it shall order to the person having such estate in his custody and to the owner thereof, and after due proof that all known debts chargeable against it and contracted in this state have been paid or satisfied, appoint such applicant to be guardian, conservator or trustee of such estate without further bond and authorize the person having such estate in his custody to deliver it to such applicant, who may demand, sue for and recover it and remove it from this state.

dren, equally and per stirpes. Thereafter, the defendant filed an account of its trust which was approved and allowed on February 4, 1936, by the Probate Court of Hartford. On the same day the Probate Court ordered one-tenth of the net avails distributed to Rose Taylor, a granddaughter of the deceased. On February 27, 1936, a return of distribution was filed and there was ordered distributed to Rose $7204.40 in stock and cash. The defendant had advanced $800 to Bessie A. Taylor, California guardian of Rose, before this order was passed, and in March, 1936, the balance was paid to her as such guardian and receipts taken.

Bessie A. Taylor was the mother of Rose. Rose is, and since 1928 has been, incompetent and domiciled in California. On January 5, 1928, Bessie was appointed guardian of the estate and person of Rose by a California court. She gave bond of $100 which was later exonerated. After the death of the testator's widow, Bessie employed Hartford counsel and through him, through her agent Earl Taylor, and by her own efforts she importuned the defendant to pay her the distributive share of Rose on the ground that Rose was ill and in need. She also filed a formal petition with the Hartford Probate Court asking for payment. This petition did not comply with § 6862. The court took no action thereon except to the extent that the order of distribution may be considered action thereon.

On April 9, 1936, Bessie was authorized by the California Superior Court to sell twenty shares of stock, a part of the estate distributed to her ward. On June 8, 1936, she filed an inventory with the California Superior Court showing assets received of $7204.40. No bond was required of her. She died July 12, 1937. Earl Taylor was appointed successor guardian and on November 15, 1937, filed an account showing assets received in the guardianship account of $710.05. He

resigned in 1939 and the plaintiff was appointed guardian. She was able to discover assets of only $72. The plaintiff was appointed conservatrix of the person and estate of Rose by the Hartford Probate Court April 10, 1944. The present action was brought by writ dated April 19, 1944. On these facts the trial court concluded in effect that the payment made by the defendant was a valid discharge even though no authority was obtained under § 6862.

Section 6862 originated in Public Acts, 1854, c. 67, which contained five sections. The first authorized a Connecticut guardian, trustee or personal representative to turn over personal estate, money or funds in his hands to a foreign guardian of a minor. The second provided: "Whenever such guardian is desirous to receive such property, money or funds he shall file his application in the probate court . . . asking said court to direct the delivery or payment of the minor's property . . . to such guardian. . . ." The other sections are irrelevant. This act was carried in the Compilation of 1854, page 392. In 1872 the statute was broadened to cover "property of any description" and provided for the appointment of the foreign guardian as also guardian in Connecticut. Public Acts, 1872, c. 56. It is not clear whether the 1872 act replaced the act of 1854. In the Revision of 1875, these statutes were combined in two sections and quite radical changes were made. Rev. 1875, p. 57, §§ 27, 28. There has been no change of substance since.[1] The two sections have now become one. The application of the statute, in the Revision of 1875, was extended to include any person who has a guardian, trustee or other legal custodian, and the word "shall" with reference to the filing of an application by the foreign custodian was changed to "may."

[1] Public Acts, 1885, p. 481, §§ 49, 50; Rev. 1888, §§ 467, 468; Rev. 1902, § 230; Rev. 1918, § 4875; Rev. 1930, § 4806; Rev. 1949, § 6862.

The revisers of 1875 did not confine themselves to a codification of existing laws but included considerable condensation. *Bassett* v. *City Bank & Trust Co.,* 115 Conn. 393, 401, 161 A. 852. This is very apparent from their treatment of the statutes under discussion. There is a presumption that a general revision of the statutes does not change the law; id., 400; but if the intention is plain the changed wording must be accepted. *Columbus Industrial Bank* v. *Miller,* 125 Conn. 313, 319, 6 A. 2d 42; *State ex rel. Engelke* v. *Kilmartin,* 86 Conn. 56, 61, 84 A. 100. As far as the provisions under discussion are concerned, any doubt as to the intent of the legislature was resolved by the passage in 1885 of a revision of the probate laws. This was not a part of a general revision of the statutes but a specific codification of these laws. The version of the sections in question written by the revisers of 1875 was adopted. Public Acts, 1885, p. 481, §§ 49, 50. It is clearly apparent that the word "shall" was intentionally changed to "may." It is true that "may" in a statute is often construed as "shall." That is done, however, only when it is necessary to effect a manifest legislative intent. *Capobinco* v. *Samorak,* 102 Conn. 310, 313, 128 A. 648; *Lake Garda Co.* v. *LeWitt,* 126 Conn. 588, 590, 13 A. 2d 510. In view of the intentional change referred to, this construction is neither required nor warranted in the case at bar. *Goodchild & Partners, Ltd.* v. *Ready Tool Co.,* 100 Conn. 378, 391, 124 A. 38.

Practical considerations confirm this construction. If the plaintiff's claim were upheld, the defendant would be penalized, by having to pay the claim twice, for having tried to comply with the demands of Rose's former guardian to relieve Rose's distress. If § 6862 were regarded as mandatory, every payment to a foreign executor, administrator, trustee, guardian or conservator would be made at the peril of the local

custodian unless the cumbersome procedure outlined in the statute were followed. It would mean considerable added expense and delay, especially where periodic payments are involved. Persons acting in a fiduciary capacity are universally held to a strict accountability. Where they are appointed by a court of competent jurisdiction, oversights such as occurred in the case at bar through the failure of the California court to require a bond of the guardian when she reported the sale of stock and the receipt of over $7000 would rarely occur. Payments voluntarily made to persons duly authorized to act by the courts of a foreign state should be protected. See General Statutes § 6829; *Halper* v. *Wolff*, 82 Conn. 552, 558, 74 A. 890; *Gray* v. *Goddard*, 90 Conn. 561, 567, 98 A. 126. The purpose of § 6862 is to enable such persons to enforce payment if, because of suspicion, extraordinary caution or for any other reason, payment is refused.

The statute has been construed in only one case. *State ex rel. Lynch* v. *Whitehouse*, 75 Conn. 410, 53 A. 897, 80 Conn. 111, 67 A. 503. The facts in that case were different from those in the case at bar. The foreign guardian had given bond in Maine in twice the amount of the moneys due his wards. We held that under those circumstances the statute was substantially complied with. The discussion in the first opinion (p. 414), as interpreted in the second (p. 119), however, clearly indicates that the application provided for in § 6862 (then Rev. 1902, § 230) is not a condition precedent to the payment to the foreign fiduciary, as claimed by the plaintiff. Somewhat similar statutes were invoked and the same result reached in the following cases: *Maclay* v. *Equitable Life Assurance Society*, 152 U. S. 499, 504, 14 S. Ct. 678, 38 L. Ed. 528; *Gardiner* v. *Thorndike*, 183 Mass. 81, 85, 66 N. E. 633. Unless compliance with the statute is held to be mandatory,

there is no difficulty in sustaining the validity of the payment.

Voluntary payment to a foreign fiduciary is generally upheld. *Marcy* v. *Marcy*, 32 Conn. 308, 322; *Selleck* v. *Rusco*, 46 Conn. 370, 372; Cleaveland, Hewitt & Clark, Probate Law & Practice, p. 830, n. 41; see *Wyman* v. *Halstead*, 109 U. S. 654, 656, 3 S. Ct. 417, 27 L. Ed. 1068; *Wilkins* v. *Ellett*, 108 U. S. 256, 258, 2 S. Ct. 641, 27 L. Ed. 718; *Citizens' National Bank* v. *Sharp*, 53 Md. 521, 529; *Klein* v. *French*, 57 Miss. 662, 668; Restatement, 2 Trusts § 321; Beale, "Voluntary Payment to a Foreign Administrator," 42 Harv. L. Rev. 597. The payment was valid.

Other issues are discussed in the briefs, but since the validity of the payment settles the case they are not noticed. The judgment was correct.

There is no error.

In this opinion the other judges concurred.