MARY E. PIERCE, guardian, *vs.* JOANNA K. PRESCOTT.

Worcester.    Oct. 3, 1878 ; Jan. 9, 1879. — Jan. 20, 1880.

A. died intestate leaving personal property, which was divided in equal shares between his widow and two minor children, a boy and a girl. The boy died under age and unmarried, and his estate, under the Gen. Sts. *c.* 91, § 1, *cl.* 6, descended to his sister, of whom the mother, who had married again, and who had two children by her second husband, was appointed guardian. The administrator of the boy's estate presented a petition to the Probate Court having jurisdiction of the parties,.for a decree of distribution among his next of kin, representing that they were the mother, the sister and the two children of the half blood, and praying that the balance in his hands might be decreed among said persons or such others as might be proved to be entitled thereto. On this petition, after due notice, the court ordered the balance to be distributed among

the persons named in the petition, which was accordingly done. Subsequently, the Probate Court ordered the guardian, in her final account with her ward, to charge herself with the amount thus received by her from her son's estate. *Held,* on appeal to this court, that the decree of distribution could not be impeached in this proceeding, nor except on a direct petition to review it; but that it was open to the ward to contend that the guardian, having full knowledge that the son's estate was derived by inheritance from his father, although she had no actual knowledge of the provisions of the statute of distributions, was guilty of negligence in allowing the decree of distribution to be made, and in not appealing therefrom, and should therefore be charged, not only with the amount personally received by her, but also with the amounts paid to the children of the half blood.

A guardian charged in her account the price of a piano purchased for her ward, a minor daughter. It appeared that the piano was purchased with the ward's money and was a suitable thing for her to have; that, after the ward was married, the guardian refused to let her have the piano, and, at the hearing before the judge of probate, when told that the item would not be allowed, unless she would state that she would give up the piano, refused to answer. *Held,* that the item was properly disallowed.

Whether a guardian should be allowed a general commission in addition to a charge for special services depends largely upon how he has managed the estate, and whether it has been kept invested by itself.

APPEAL by Mary E. Pierce, guardian of Joanna K. Prescott, from a decree of the Probate Court, requiring her to charge herself in her final account with certain sums of money not included therein, and disallowing certain alleged credits. Hearing before *Endicott,* J., who reported the case for the determination of the full court. The facts appear in the opinion.

*J. Hopkins,* for the appellant.

*W. W. Rice & F. T. Blackmer,* for the appellee.

COLT, J. The decree appealed from required the appellant to charge herself as guardian with money received from the administrator of the estate of her son, Edward N. Cutler. The latter died under age, not having married, and possessed at the time of his death of an estate, which came to him wholly by inheritance from his deceased father, William N. Cutler, the former husband of Mrs. Pierce. The amount in question was paid under a decree of distribution of the Probate Court in 1870, made upon the petition of the administrator of Edward N., which set forth the names of the supposed next of kin, with their places of residence and relationship to the deceased, and prayed that a distribution of the balance in his hands might be decreed by the court to be made among the persons named, or such others as might be proved to be entitled thereto according to law. Mrs.

Pierce, the mother, was stated to be one of the next of kin. Annexed to that petition was an affidavit of the administrator, that the representations contained in it were true according to his best knowledge and belief; due notice to all parties interested was ordered and service thereof duly made. The intestate at the time of his death, and all parties represented to be interested, including Mrs. Prescott, were residents of the county; and no question is now made but that the Probate Court had jurisdiction of the subject-matter and of the parties, and that its jurisdiction was exercised in a legal manner. The decree of distribution was made as asked for, to the parties named as next of kin, and the money was paid by the administrator to Mrs. Pierce, to be held by her in her own right.

It is conceded that Mrs. Prescott after the death of Edward N. was the only living child of William N. Cutler, and it is contended that, as the property of which Edward N. died possessed, came from his father, Mrs. Prescott is now entitled, notwithstanding the decree of the Probate Court, to the whole of the estate of Edward N., under that clause of the statute which provides, by way of exception to the general rule, that the estate which comes to a deceased child by inheritance from a deceased parent shall descend in equal shares to the other children of the same parent, when the child dies under age and not having married; Gen. Sts. c. 91, § 1, cl. 6; and that the guardian should now be charged with it in her account. It is evident that this clause of the statute was overlooked by the administrator in drafting the petition on which the decree of distribution was made.

Upon the entry of the appeal in this court, the case was referred, by the consent of parties, to a master, to report the facts and his findings thereon, and the evidence requested by either party. The master found that the guardian was not bound to account for the amount received under the decree. The appellee excepted to this finding.

1. The decree of distribution was the decree of a court of competent jurisdiction, proceeding to a judgment in a manner authorized and required by law, upon the evidence then before it, after due notice to all parties interested. It was the decree of a court now by the St. of 1862, c. 68, made a court of record. The immediate, direct and sole purpose of the judgment was to

ascertain and determine who were the persons entitled to a distributive share; to that end it was necessary to ascertain who were next of kin, and whether the estate to be divided came from the father of the intestate. These were questions of fact, as well as law, and cannot be treated in any just sense as incidental and collateral only to the judgment to be rendered. They were the very thing adjudicated.

The power to grant administration, and to pass all decrees necessary in the settlement of the estates of deceased persons, is within the peculiar and appropriate jurisdiction of the probate courts of this Commonwealth. In England the same jurisdiction was formerly exercised by the ecclesiastical courts, and in *Barrs* v. *Jackson*, 1 Phillips, 582, where this question was much discussed, Lord Lyndhurst held that the sentence of an ecclesiastical court, in a suit for administration which turned upon the question who were next of kin to the intestate, was conclusive upon that question in a subsequent suit in the Court of Chancery, between the same parties, for distribution. In *Allen* v. *Dundas*, 3 T. R. 125, payment to an executor named in a forged will, which had been proved and allowed in the prerogative court, was held a good payment in an action to recover the debt, brought by an administrator appointed after the proceedings had been set aside, because the spiritual court had jurisdiction over the subject-matter, and every person was bound to give credit to the probate till vacated. This rule is also recognized in more recent cases. *Spencer* v. *Williams*, L. R. 2 P. & D. 230. *Wytcherley* v. *Andrews*, L. R. 2 P. & D. 327.

The conclusive effect of the judgments of probate and other courts, exercising similar powers, upon all matters within their jurisdiction, is generally maintained in the several states. We refer to a few of the cases only. *Thompson* v. *Thompson*, 9 Penn. St. 234. *Peebles' appeal*, 15 S. & R. 39. *Colton* v. *Ross*, 2 Paige, 396. *Probate Court* v. *Van Duzer*, 13 Vt. 135. *McFarland* v. *Stone*, 17 Vt. 165. *Tebbets* v. *Tilton*, 4 Foster, 120. *Clark* v. *Pishon*, 31 Maine, 503. *Broderick's will*, 21 Wall. 503.

The law is so laid down by this court, although it is sometimes said, as if in qualification of the rule, that, although the Probate Court has jurisdiction over the subject-matter, yet, if it clearly exceeds its powers or does an act prohibited by law, its decree

may be avoided in collateral proceedings, as well as by appeal, but this is only one way of saying that where the jurisdiction of the court over the subject-matter is in any particular limited, then its decree is not binding, if it oversteps the limits fixed. *Jenks* v. *Howland*, 3 Gray, 536. It is not in such case the indiscreet exercise of a power granted, but the doing of an act for which no power is given, or which is expressly prohibited. *Smith* v. *Rice*, 11 Mass. 507. *Jochumsen* v. *Suffolk Savings Bank*, 3 Allen, 87, and cases there cited.

In *Loring* v. *Steineman*, 1 Met. 204, it was decided that a decree of distribution by the Probate Court, after such notice as is prescribed by statute, or, if no statute requires notice, after such notice as the court in its discretion shall think proper to order, is so far conclusive as to protect the administrator, acting in good faith, in conforming to it, and further that it is the duty of that court to ascertain who are the persons entitled to distribution, and to decree distribution to them by name. In deciding these questions, said Chief Justice Shaw, " the court must be governed by those rules of evidence, and those presumptions of fact from circumstances, which are resorted to by all other tribunals in determining questions of fact." The possibility of mistake, he declared, cannot prevent the judgment from being so far conclusive as to protect all who are compelled to act under it. The distribution of an intestate estate was said to be analogous to proceedings *in rem*. The subject-matter, that is to say, the property, is within the jurisdiction of the court; and the judgment, by determining who are entitled to distributive shares, and extending to the entire estate, is necessarily conclusive, because nothing further is left to be distributed. And in the recent case of *White* v. *Weatherbee*, 126 Mass. 450, a decree of distribution was declared to be an adjudication, in a proceeding in which the administrator was a party, which determined the amount to be paid and the person to whom it was to be paid; it was the administrator's duty to pay according to the decree; as to him the question was *res adjudicata*, and his failure to pay was a breach of the administration bond for which his sureties were liable.

2. It is contended in behalf of the ward, Mrs. Prescott, that the decree of the Probate Court, charging the guardian in this

case with the amount in controversy, upon a finding that its former decree was made under a mistake of fact, is in itself a sufficient revocation of that decree to make its proceedings in this case valid.

The Probate Court without doubt has an extensive power, upon proper application and upon due notice to all interested, to correct its own errors and mistakes in favor of parties, who, without fault, are injured thereby. This power was asserted and maintained upon a full discussion of the authorities in *Waters* v. *Stickney*, 12 Allen, 1. When the proceedings are interlocutory, or are still before the court, as where an estate is still unsettled, it might be proper upon application to correct mistakes when it could be done without ultimate prejudice to the rights of parties interested.

This case does not require us to consider the proper limits of this power; for it cannot be exercised except upon a direct petition for the review of the decree complained of, and upon notice to all the parties having acquired rights under that decree. It cannot be reversed in another proceeding between different parties, and as incidental to the settlement of an account between those parties, simply by an order that the guardian should account for the money received by her as the distributive share of an estate already settled.

3. It is further contended, in behalf of the ward, that, by the appeal here taken, the guardian's whole account is opened, (see *Willey* v. *Thompson*, 9 Met. 329,) and that she should now be charged, not only for the amount actually received from the administrator, but also for the amount paid by him, under the same decree, to the half-brothers of the intestate; upon the ground that the guardian, as matter of law, was guilty of negligence, in not bringing to the notice of the court facts of which she had knowledge, and upon proof of which the whole estate would have been decreed to the ward and paid to her as guardian.

It appears from the master's report, that the guardian had full knowledge that the estate of Edward N. Cutler, distributed by the administrator under this decree, was that portion of his father's estate which came to him at his decease, but had at the time no actual knowledge of the provisions of the statute

of distributions; that the administrator was a lawyer in good standing; that the guardian took no active part in procuring the decree, and has taken no steps to have it revoked. The master found that she was not guilty of any negligence, and had not failed to perform any duty relative to the procurement of the decree.

In the opinion of the court this finding of the master is not warranted by the facts reported. In obtaining possession of the ward's estate, as well as in its preservation and disposition, a guardian is held to the same degree of responsibility as is imposed upon executors, administrators, and trustees. *French* v. *Currier*, 47 N. H. 88. It is his duty to recover all the property of his ward which comes to his knowledge, whether in possession or in action. He must use due diligence to discover its existence. He is bound to use that care and prudence which competent and faithful men employ in their own business. If he has knowledge of all the facts upon which the title of his ward depends, then it is a breach of duty on his part, not to assert and enforce that title. It is an obligation assumed by accepting the guardianship, for the neglect of which the guardian cannot excuse himself by pleading ignorance of the law on which the rights of his ward depend. If the estate suffers loss by such ignorance, the guardian is chargeable with it on the ground of constructive negligence. In *Schultz* v. *Pulver*, 11 Wend. 361, it was decided that, if debts collectible are not collected within a reasonable time, the executor or administrator is liable, although no improper motives are imputable to him; he is chargeable with them as assets which have come to his knowledge. In *Lowson* v. *Copeland*, 2 Bro. Ch. 156, an executor was charged with a bond debt for neglecting to take legal steps to collect it, in consequence of which it was lost, although it was contended with much reason that there was no actual negligence. In *Caffrey* v. *Darby*, 6 Ves. 488, trustees were charged with a loss occasioned by their negligence in not collecting a debt, although it was conceded by counsel and the court that they had not been influenced by improper motives. The Master of the Rolls declared that " it would be very dangerous, though no fraud could be imputed to the trustees and no kind of interest or benefit to themselves was looked to, to lay down this principle, that trus

tees might, without any responsibility, act as these did " In *Leslie* v. *Baillie*, 2 Yo. & Col. Ch. 91, it was assumed that an executor was bound to know the laws of his own country, although not those of a foreign country. And in *Boulton* v. *Beard*, 3 De G., M. & G. 608, a trustee was held responsible for the misapplication of money paid in good faith under the advice of counsel. See also Perry on Trusts, § 927; *Forward* v. *Forward*, 6 Allen, 494; *Phillips* v. *Frye*, 14 Allen, 36; *Harding* v. *Larned*, 4 Allen, 426.

In the case at bar, the guardian, knowing all the facts upon which the ward's title depended, allowed a decree of distribution to be made in 1870, in violation of the plain provisions of the statute, which decree deprives the ward of her property, giving it to the guardian herself and her children by another husband. From this decree she did not appeal, and has taken no steps to secure its revocation. It cannot be said that the guardian, however innocent of fraudulent purpose, was not chargeable with failure to perform her duty in securing the rights of the ward.

4. As to the claim of the guardian for allowance on account of a piano purchased for the ward, there was evidence before the master, that it was bought with the money of the ward, and that it was a suitable and proper instrument for the ward to have, having reference to her situation and circumstances in life. But it appeared that, after the ward was married and went to live with her husband, she demanded the piano, which she desired to use, and the guardian refused to give it to her, although she had a suitable place in which to keep it. And, at the hearing before the judge of probate, the guardian refused to answer the question whether she would give up the piano if the item should be allowed; and at the close of the hearing, also, although informed by the judge that he should refuse to allow the item unless she would state that she would give up the piano, she still declined to answer. This is strong evidence that the piano was purchased by the guardian as her own property, and is wholly inconsistent with the good faith of the alleged purchase for the ward. The question was whether the piano ever became the property of the ward; and upon that question we see no good reason to reverse the finding of the justice of this court sustaining the exception to the report of the master allowing this item.

5. The only other point discussed at the argument relates to the amount of compensation to be allowed to the guardian for services rendered. The master has found that all the property was not invested; that what was invested was in her husband's name, and that the guardian refused to state where it was now invested. He also found that certain amounts should be allowed for special services, and no more. No question of law is raised upon the facts found by the master. Whether a guardian should be allowed a general commission in addition to his charges for special services, depends largely upon how he has managed the estate, and whether it has been kept invested by itself. *Blake* v. *Pegram*, 109 Mass. 541, 557. We see no reason to disturb the decision of the justice of this court overruling the guardian's exception to the master's report on this point.

The result is, that the first exception to the master's report is sustained, and his finding that the guardian was not bound to account for the sum received under the decree of distribution is set aside; and the case must stand for hearing before a single judge to determine whether a further hearing shall be had before him or before a master upon the question of her liability to that extent, and whether the guardian is chargeable for the sums paid by the administrator to other persons under the decree of distribution. *Decree accordingly.*