O

## No. 2308.

### R. P. SARGENT v. KATE LEE WALLIS.

1. GUARDIANS AND WARDS.—A guardian who, before his appointment and qualification as such, obtains illegal possession of the ward's property and disposes of it before his appointment and qualification, but who, in his account, charges himself with its value as so much money on hand to represent it, constitutes himself a debtor to the ward's estate, and the sureties on his bond are responsible for his failure to turn it over to the ward or his successor in the guardianship.

2. SAME.—By the terms of the statute it is made the duty of a guardian to use due diligence to collect all claims and debts owing to the ward, and to recover possession of all of his property; and whether the guardian by his own wrong, in illegally disposing of the ward's property before his appointment, constituted himself the ward's debtor, or whether it was his duty as guardian to regain possession of the specific property, in either event the sureties on his bond would be liable for his default. (Rev. Stat., arts. 2546–2616.)

3. SAME.—The rule that sureties on a guardian's bond are not liable for a misappropriation of assets made before they became sureties, has no application to the case above stated. Whether the guardian's default consisted in a failure to recover the property illegally disposed of by him, before his appointment, or to account for assets, if he be deemed to have been a debtor, and therefore to hold for his ward a sum of money equal to his indebtedness, the duty violated was continuous in its character.

4. SAME.—If a guardian by his own wrong constituted himself a debtor to his ward's estate before his appointment, and by qualifying as such prevented the appointment of another to protect the estate, being unable to sue himself, he would be considered in legal contemplation as having paid the debt to himself, and to continuously hold the money as long as his representative character continues, for the payment of which to the ward the sureties on his official bond are liable.

APPEAL from Galveston. Tried below before the Hon. W. H. Stewart.

The appellee, Kate Lee Wallis, a minor, by her guardian, W. B. Wallis, instituted this suit on the twenty-eighth day of May, 1886, in the district court of Galveston county, against George O. Cherry, her former guardian, and R. P. Sargent, S. T. Blessing and J. P. Kindred, the sureties on his bond, which was executed by them on July 12, 1882, and approved July 13, 1882, and made a part of the petition.

The petition alleged that Cherry first qualified as guardian of the person and estate of the minor December 23, 1878; that he continued to act as the guardian of the estate until August 15, 1884, when he was removed.

The petition further alleged that on or about the thirtieth day of October, 1878, plaintiff was "the owner of a large amount of money and property, to wit: The sum of three thousand dollars in money, and the sum of three thousand dollars in United States bonds, or obligations of the United States of America, styled four per cent bonds; and the plaintiff being so possessed of said property, the said defendant Cherry, on or about the day and year last aforesaid, in the city of Galveston, Texas, unlawfully seized and took possession thereof, and wrongfully and fraudulently converted the same to his own use and benefit, by reason whereof the said Cherry became—on, to wit, the said thirtieth day of October, 1878—indebted to plaintiff in the full sum of six thonsand five hundred dollars aforesaid, and was so indebted to her in said sum at the time of his appointment and qualification as guardian aforesaid, and that no part thereof has been paid or returned to plaintiff or any one for her."

The petition in its second count charged that Cherry, as guardian, was entitled to the possession and control of plaintiff's money and property, "and was, as said guardian, bound to collect said money, and recover possession of said bonds and property for the benefit of said estate, but that at no time during the said period of his guardianship of said estate—to wit, from the twenty-third day of December, 1878, to the fifteenth day of August, 1884—did said Cherry collect said money or recover the possession of said bonds, although, at all times during the guardianship of said estate, said money might have been collected, and said bonds and other property recovered for said estate by the use of due diligence," etc.

The third count of the petition charged that during the guardianship Cherry received and took into his possession the money and bonds spoken of, and that they were in his possession as guardian after the execution and approval of the bond sued on in this case, and while said bond was in force Cherry wrongfully and fraudulently misapplied, converted and appropriated said money and bonds to his own use and benefit.

The fourth count charged generally that during the term of his guardianship Cherry took into his possession the money and

bonds, and that while guardian he converted the same to his own use, etc.

The defendants Cherry, Sargent and Blessing, answered by general demurrers and general denials, but the defendant Kindred filed no answer.

The case was tried without a jury, and judgment was rendered against all the defendants for the sum of three thousand twenty-one dollars and ninety-eight cents, with interest thereon at eight per cent, and costs of suit. On written motion of defendants Sargent and Blessing, the court gave in writing its separate conclusions of law and fact. The facts found, so far as material, are referred to in the opinion. The defendant Sargent alone prosecuted this appeal.

*Labatt & Noble,* for appellant, that the conversion of the funds being before the date of the bond, relieved the sureties from liability, cited Hetten v. Lane, 43 Texas, 279; Miller v. Stuart, 9 Wheaton, 703; Farrar v. United States, 5 Peters, 373; United States v. Boyd, 15 Peters, 207; Leggett v. Humphreys, 21 Howard, 76; Martin v. Thomas, 24 Howard, 317; Murfree on Official Bonds, sections 710, 722, 734, 636.

*Davis, Davidson & Minor,* for appellees, cited Revised Statutes, Articles 2477, 1958; Lockhart v. White, 18 Texas, 103; Grant v. McKinney, Administrator, 36 Texas, 62; Schouler's Domestic Relations, third edition, section 367; Mattoon v. Cowing, 13 Gray (Mass.), 387; Stevens v. Gaylord, 11 Massachusetts, 269; Leland v. Felton, 1 Allen, 531; 10 Cushing, 173; 12 Massachusetts, 198; 5 Maine, 310; Eaton v. Walsh, 42 Missouri, 272; Jay v. Martin, 49 Alabama, 192; State v. Osborne, 67 North Carolina, 259; Neill v. Neill, 31 Mississippi, 36.

STAYTON, ASSOCIATE JUSTICE.   Prior to the time G. O. Cherry became guardian of the estate of the appellee, he took into his possession United States four per cent bonds amounting to three thousand dollars.   This was done under an agreement with his wife, who was then the guardian of the estate of the minor to whom the bonds belonged.   At the time he received the bonds he executed an instrument as follows:

"Know all men by these presents, that I have this day borrowed from my wife, Mrs. C. C. Cherry, guardian of the estate

of minor Katie Lee Wallis, three thousand dollars in United States four per cent bonds, which I promise to pay to her, or their equivalent in money at market value, when due, December 1, 1891, less the amount for her maintenance and support; it being understood and agreed to by me that the interest on said bonds is to be used toward the support of said minor in so far as they will contribute to this purpose.

"Given under my hand and seal, this the thirtieth day of October, 1878, in the city and county of Galveston, State of Texas."

Subsequently to the execution of this instrument and receipt of the bonds, he hypothecated them, and after this, was appointed and qualified as guardian, and having been required to do so, he, on July 13, 1882, executed a new bond as guardian, to which the persons who are made defendants, with him became sureties; but prior to the time his last bond was executed, the debt for which the bonds had been hypothecated not having been paid, their holder disposed of them. On the seventh day of August, 1884, Cherry was removed from the guardianship, and the person who serves as guardian in this case, was appointed and qualified in his stead.

From the time that Cherry qualified, until the last report made by him, and inclusive of that, he charged himself with the face value of the bonds as so much money in hand, but credited himself with the maintenance of his ward and some other matters which more than equaled the interest due on the bonds, but he never had on hand the money which his reports showed to be on hand, nor did he ever regain possession of the bonds. He was directed to turn over to his successor the ward's estate, which he showed to be in his hands, and this he failed to do, whereupon this action was brought against him and the sureties on his bond to recover it.

The petition is such as to authorize a recovery against the guardian and his sureties, under any view of the case, if the law affects them with liability under the facts. A judgment was rendered against the principal and all the sureties, and from it only the surety Sargent appeals.

The transaction through which Cherry obtained the bonds from his wife was unauthorized, and the bonds remained a part of the ward's estate, and he may be held either as a debtor to his ward, that relation attaching before he became guardian, or

because it was his duty to recover the bonds from any person holding them, as the present guardian may insist. The petition is so drawn as to hold the former guardian, as well as his sureties, liable on either or both grounds, if the law renders them liable under the facts.

The bond of the guardian bound him, not only to account for and pay over such money or other effects of his ward as came within his hands, but also to faithfully discharge the duties of guardian of the estate of his ward according to law. The bonds were the property of his ward, and it was his duty continuously, from the time of his first qualification, to regain and maintain possession of them; and the fact that his own act, before he became the guardian, rendered such action necessary, in no way relieved him from that duty. For the faithful discharge of this duty the sureties on the last bond were as much bound as were those on the first.

If the person who held the bonds through the hypothecation, or any other person, came into their possession through illegal means, with which the guardian was in no way connected, before his appointment or afterwards, it certainly would have been his duty to recover them, as any other property belonging to his ward's estate; and the fact that he was an actor in the illegal diversion certainly can not relieve him or his sureties from liability for his failure of duty in this respect. "The guardian of the estate shall use due diligence to collect all claims or debts owing to the ward, and to recover possession of all property to which the ward has a title or claim; provided there is a reasonable prospect of collecting such claim or debts, or of recovering such property; and, if he neglects to use such diligence, he and his sureties shall be liable for all damages occasioned by such neglect," is the plain declaration of the statute. (Rev. Stat., art. 2546, 2616.)

If we regard the guardian as having been a debtor to his ward's estate, on account of what transpired before his appointment, the position of himself and sureties would be no better. If a person appointed executor, administrator or guardian be a debtor admitedly, at the time of his appointment, to the estate of which he is made the representative, having voluntarily assumed the trust, and his sureties having obligated themselves that he will faithfully execute it, and thus prevented the appointment of any other person, and being unable to sue himself, he must, in legal contemplation, be considered to have paid

the debt to himself and to continuously hold the money, so long as his representative character continues, and his sureties, as well as himself, therefore liable for it. (Winship v. Bass, 12 Mass., 198; Leland v. Felton, 83 Mass., 533; Mattoon v. Cowing, 79 Mass., 387; Ipswich Manufacturing Company v. Story, 46 Mass., 313; Stevens v. Gaylord, 11 Mass., 269; Avery v. Avery, 49 Ala., 193.)

The indebtedness of the guardian would be assets, for which, as other assets, he and his sureties must account. The rule that sureties are not liable for the misappropriation of assets made before they became sureties, is not applicable in this case; for the duty violated—whether it consists in failure to recover the bonds or to account for assets, if the guardian be deemed to have been a debtor, and therefore to hold for his ward a sum of money equal to his indebtedness—is one continuous in character.

There is no error in the judgment, and it will be affirmed.

*Affirmed.*

Opinion delivered March 11, 1887.

(Chief Justice Willie did not sit in this case.)