THE STATE EX REL. THOMAS J. LYNCH, GUARDIAN, *vs.*
EUGENE W. WHITEHOUSE ET ALS.

Third Judicial District, New Haven, June Term, 1907.

BALDWIN, C. J., HAMERSLEY, HALL, PRENTICE and THAYER, Js.

No delivery or other formality is necessary to effect a transfer of trust funds from one trust to another, where the same individual administers each. It is essential, however, that the trust fund be in the possession or immediate control of the trustee when the second trust is assumed.

A domestic administrator whose duty it was to pay over the balance of the estate in his hands to minor heirs in the final distribution, was afterward appointed their guardian in Maine, where they resided, and held that trust for two years, when he was removed. He not only did not in fact pay over any money nor transfer any property to them, nor to himself as their guardian, but before his appointment as guardian he had used all the funds of the estate for his own purposes and never replaced them. *Held:—*

State ex rel. Lynch v. Whitehouse.

1. That he and the sureties on his bond as administrator were liable to the present guardian of the minors for the distributive shares which should have been paid to them.

2. That it was no defense that he notified the judge of probate in this State that he had paid the funds to himself as guardian, and that he filed an account in the Probate Court in Maine charging himself as guardian with the same amount; nor that he then had property enough to make good the deficit and was solvent.

3. That the fact that *W* and his sureties on his guardian's bond might also be liable for his neglect to recover or replace the trust funds did not necessarily exclude his liability as administrator for the actual conversion which he had committed while acting in that capacity.

*W's* account charging himself with the fund as guardian, was admitted as evidence upon the question whether a transfer of the fund had in fact been made, and also to contradict his testimony that there was no such transfer; but was excluded as evidence of a transfer by operation of law, if there was none in fact. *Held* that there was no error in these rulings of the trial court.

One of *W's* guardianship bondsmen applied to the Maine court for his removal, alleging that he had received a sum of money and had converted the same to his own use; and on that petition, which was found true, *W* was removed, the plaintiff was appointed in his stead, and *W* was ordered to pay to the plaintiff the amount of the fund in suit, which order he never obeyed. *Held* that those proceedings did not estop the plaintiff from insisting that there had been no transfer by operation of law from the administrator to the guardian, since the plaintiff was not the petitioner upon the removal application nor were its allegations the same as those in the present suit.

A reason of appeal which attacks as erroneous four printed pages of a charge to the jury, some portions of which are unexceptionable and others in compliance with the appellant's requests, is not such a "specific" assignment as the statute, § 802, requires.

An assignment of error is insufficient which specifies "the rejection of the testimony of *S* as stated in the finding," when the finding shows three separate rulings and exceptions in respect of his testimony, only one of which was in fact challenged as erroneous.

Argued June 5th—decided July 30th, 1907.

ACTION upon a probate bond, brought to the Superior Court in Fairfield County and tried to the jury before *Ralph Wheeler, J.;* verdict and judgment for the plaintiff for $6,205, and appeal by all the defendants other than Whitehouse. *No error.*

*John H. Light*, with whom was *John J. Walsh*, for the appellants (defendants).

*Levi Warner* and *Louis Goldschmidt*, for the appellee (plaintiff).

HALL, J. This is an action upon a probate bond of $10,000, executed June 16th, 1894, by Eugene W. Whitehouse of Augusta, Maine, as principal, and three residents of this State as sureties, conditioned upon the faithful performance by said Whitehouse of his duties as administrator, under an appointment by the Court of Probate of Norwalk in this State, of the estate of Charles W. Savage, who died intestate at Norwalk on the 5th of June, 1894, leaving property in this State, and two minor children residing in Augusta, Maine.

The action is brought for the benefit of said minors, upon the relation of Thomas J. Lynch, under his appointment as their guardian by the Court of Probate of Norwalk on the 13th of December, 1899.

The alleged breach of the administrator's bond is his failure to distribute the estate of said Charles W. Savage, of the value of about $6,000, which came into his hands as administrator, and his failure to pay over and deliver the funds and property of said estate to the plaintiff Lynch, as guardian, in accordance with an order of the Court of Probate of Norwalk, and his conversion of said estate to his own use.

Only the sureties upon the bond defended the action. Among their answers to the complaint, the defendants allege, in substance: (1) that on the 8th of March, 1897, and after his appointment in this State as administrator of the estate of said Charles W. Savage, said Whitehouse was by the Court of Probate of Augusta, Maine, duly appointed guardian of said minor children of said Savage, and that on the 10th of March, 1897, he, as such administrator, transferred to himself, as guardian, all the said funds and property of the estate of Charles W. Savage; and (2) that

VOL. LXXX—8

on the 13th of March, 1899, one Seth C. Whitehouse, a surety upon the guardian's bond of Eugene W. Whitehouse, brought, by his attorney Leslie C. Cornish, a petition to the Court of Probate of Augusta, Maine, in which he alleged, among other things, that since said Eugene W. Whitehouse was appointed guardian " he had received a sum of money as such guardian, and converted the same to his own use," and had failed to file any account of the money or property which came into his hands as guardian, and in which he asked for the removal of said Eugene W. Whitehouse as guardian, and that said Whitehouse be required to file his account up to the time of his removal, and that some suitable person be appointed to succeed him ; that on the 12th of June a hearing was had on said petition, and the allegations thereof found true, and said Eugene W. Whitehouse was removed, and was ordered to file his final account on or before the fourth Monday of June, 1899, and to transfer to his successor the balance of all property and funds belonging to said minors ; that on the 6th of May, 1899, Eugene W. Whitehouse filed his account with the Court of Probate of Maine, charging himself, as guardian, with all the funds and property described in the complaint; and that on said 12th of June, 1899, the plaintiff Lynch was duly appointed guardian of said minors upon the petition of said Seth C. Whitehouse; that in the matter of said appointment, and in the prosecution of the present action, the plaintiff was, and is, represented by said Leslie C. Cornish as his attorney, and that by reason of these facts and the plaintiff's knowledge of them, and by reason of said judgment of the court of Maine, the plaintiff is estopped from claiming that said Whitehouse as administrator, did not turn over to himself, as guardian, all the property described in the complaint.

The allegations of these answers that Whitehouse, as administrator, has paid over or transferred to himself, as guardian, the funds and property of the estate of said Savage, and that the plaintiff is estopped from claiming the contrary, are denied by the plaintiff in his reply.

The plaintiff claimed in the trial court that the evidence before the jury showed the following facts:—

On the 26th of February, 1896, the defendant Whitehouse filed in the Court of Probate of Norwalk his final account as administrator of the estate of said Savage, which was duly accepted and approved by said court, showing a balance of said estate in his hands as such administrator of $6,344.96, consisting of cash to the amount of $5,325.71, and of other personal property not material to the questions in this case. On said day the Court of Probate of Norwalk found that said minor children, James Savage and Charles W. Savage, were the distributees of said estate and entitled to receive the same. Said estate has never been distributed to said minor children of said Savage, but has been appropriated by said defendant Whitehouse to his own use.

While acting as such administrator Whitehouse kept no separate account of the moneys of said estate, but deposited them in a bank in Augusta, in his own name, and intermingled them with his own funds and funds held by him as trustee for other parties. With the funds of the estate so deposited he purchased no other property for the estate, and prior to some time in January, 1897, he had overdrawn his account in said bank, and had used said sum of $5,325.71 received by him as administrator, for his own private purposes.

On March 8th, 1897, the defendant Whitehouse was appointed guardian of said minors by a Court of Probate in Maine, and gave bonds as required by law, and on the 10th of March, 1898, he wrote to the judge of the Court of Probate of Norwalk, Connecticut, inclosing the certificate of his appointment as guardian in Maine, and declaring that as administrator of the estate of said Charles W. Savage he had turned over to himself as guardian of said minor children said $5,325.71 in cash belonging to said estate.

When he was so appointed guardian in Maine, and when he wrote said letter to the judge of the Court of Probate of Norwalk, Whitehouse had already used all said funds

belonging to the Savage estate for his own private purposes, and had overdrawn his said bank account as before stated, and had no funds, securities, or other property which he could turn over to himself as guardian, and was unable to pay said sum due from himself as administrator, and was then and has ever since been insolvent.

Whitehouse in fact made no transfer of any fund or property to himself as guardian. He in no way charged himself as guardian with any of the funds or property of the Savage estate, except by writing said letter to the judge of probate of Norwalk and by filing in the Court of Probate in Maine, on the 6th of May, 1899, a sworn statement charging himself, as guardian, with said sum of $5,325.71 received from said estate, and with the other property of said estate, and crediting himself with the sums expended by him for said minors.

After his appointment as guardian by the Court of Probate in Maine, March 8th, 1897, Whitehouse, on the 8th of January, 1898, filed in said Court of Probate of Norwalk a sworn application, representing that he had been so appointed guardian in the State of Maine; that as administrator of the estate of said Savage he held in his hands the sum of $6,344.96, as shown by his final account accepted by the Court of Probate of Connecticut, which belonged to said minor children of said Savage, and asking for his appointment as guardian by said Court of Probate of Norwalk, and that he be authorized, as such guardian, to take such personal estate and remove it from the State of Connecticut. No action was ever taken upon said petition by said Court of Probate of Norwalk.

On the 12th of June, 1899, upon the petition of one of the sureties upon the bond given by Whitehouse upon his appointment as guardian in Maine, said Whitehouse was removed from said office of guardian by the Court of Probate in Maine, and the plaintiff Lynch appointed by said court in his place; and on the 13th of December, 1899, the plaintiff Lynch was appointed guardian of said minors by the Court of Probate of Norwalk, and said Whitehouse

was ordered by the Court of Probate of Norwalk to deliver, as administrator, all the estate of said Savage in his hands to said Lynch as such guardian. This order has never been complied with.

In addition to the facts that Whitehouse, from March, 1897, until his removal in June, 1899, was both administrator and guardian; that in March, 1897, he wrote to the judge of probate of Norwalk declaring that he had transferred the funds and property of the Savage estate to himself as guardian; and that in May, 1899, he filed an account in the Court of Probate in Maine in which he charged himself as guardian with the funds and property of the Savage estate,—the defendants claimed to have proved in the trial court, as sustaining the allegations of their answer, that Whitehouse had transferred to himself as guardian all the funds and property which he had received from the Savage estate; that although when Whitehouse was appointed guardian in 1897 he had already used all said funds of the Savage estate for his own private purposes, he was yet solvent at that time and owned unincumbered real estate of the value of $50,000, and rights of action and other personal property to the value of $30,000, and was able to meet the obligations of his business as they matured, and if not pressed for immediate payment; that in December, 1897, when a demand was made upon him for $6,000, he borrowed that sum upon his note, which he afterward secured by mortgage upon his real estate; that as late as January, 1899, judgments, which were obtained against him, were satisfied out of his real estate; and that when he was appointed guardian, and for a long time thereafter, he "had sufficient estate to have enabled him, in the exercise of reasonable diligence, to withdraw therefrom more than enough money to have made the Savage estate whole." The defendants also claimed to have proved the allegations of their said answer claiming an estoppel.

It was agreed at the trial that Whitehouse, while guardian and after he was removed, had paid out a considerable sum for the benefit of said minors, and that in case the de-

fendants were held liable in this action they should be credited with a certain sum.

Aside from the question of the solvency of Whitehouse at the time and after he was appointed guardian by the Court of Probate of Maine, in March, 1897, the facts of the case appear to have been practically undisputed.

The defendants requested the trial court to charge the jury in accordance with the allegations of said part (2) of their answer, that the plaintiff was estopped by the proceeding in the Court of Probate in Maine in 1899 for the removal of Whitehouse as guardian, and the appointment of the plaintiff Lynch as his successor, from claiming that Whitehouse did not turn over to himself as guardian the $5,325.71 cash received by him as administrator.

This request was rightly refused. Neither the plaintiff Lynch, nor any other representative of said minors, but one of the sureties upon Whitehouse's bond as guardian, was the petitioner in that proceeding. None of the allegations of that petition, found true, averred that Whitehouse, as guardian, had received and converted the sum named in this complaint, or any named sum, nor that as administrator of the Savage estate he had paid or transferred any sum to himself as guardian. The account filed in the Court of Probate in Maine on May 6th, 1899, while these proceedings for his removal were pending, and in which account Whitehouse charged himself with $5,325.71 " cash from Chas. W. Savage estate," does not appear to have been acted upon by that court, but its decree, passed June 12th, 1899, after the filing of such account, requires Whitehouse to settle his guardian account on the fourth Monday of June, 1899.

The defendants further requested, in substance, the court to instruct the jury : (1) that to enable Whitehouse, as administrator, to lawfully pay over or transfer to himself as guardian said $5,325.71 received from the Savage estate, it was not necessary that he should have been appointed guardian in this State ; (2) that no formal transfer or credit upon any account as administrator or guardian

was required to be made to render such a transfer effective;
(3) that Whitehouse could not have made such transfer if
at the time he was so appointed guardian he had no funds
or property of the Savage estate in his hands as adminis-
trator, but had converted said estate to his own use, and
was insolvent; (4) that the fact that at the time he was
appointed guardian Whitehouse did not have property
enough to make immediate payment of all claims against
him was not proof of insolvency; and (5) that although
at the time he was appointed guardian he did not have in
his hands or in his immediate control any of the funds
which he had received from the Savage estate, yet if he
then owned other property from which by proper diligence
he could have realized the amount of such funds, and
could have paid or transferred them to himself as guardian,
and was not insolvent, and had acknowledged the receipt
of said funds as guardian, and had charged himself with
the possession of them as guardian,—the jury should render
a verdict for the defendants.

The court in effect complied with these requests, except-
ing the last, which was properly refused.

We did not hold on the former appeal of this case (*State
ex rel. Lynch, Guardian,* v. *Whitehouse et al.,* 75 Conn.
410, 53 Atl. 897), as seems to be claimed by the defend-
ants, that proof of the mere solvency of Whitehouse at the
time he was appointed guardian, although it appeared that
he did not then have the funds of the estate in his hands
or in his immediate control but had appropriated them to
his own use, would relieve the defendants from liability.

The principal point decided upon that appeal was that
the defendants were not rendered liable by the mere fact
that Whitehouse failed to obtain the authority of the
Court of Probate of this State, as provided in § 230 of the
General Statutes, before transferring or paying over to him-
self as a guardian appointed by the Court of Probate of
Maine, the funds which he held as an administrator ap-
pointed by a court of this State. It appeared upon that
appeal that the defendants had claimed at the former trial

that the $5,325.71 received from the Savage estate was on deposit in a bank in Maine in Whitehouse's individual name at the time he was appointed guardian, and when it was claimed that the transfer of said funds from himself as administrator to himself as guardian was made ; and that the plaintiff had claimed at said former trial that White-house at that time did not so have said funds on deposit or in his hands as administrator, but that he had already converted them to his own use, and was insolvent.    We held, in effect, that upon the facts as then claimed by the defendants the law would regard the funds as transferred by the administrator to the guardian, but that upon the facts as claimed by the plaintiff no such transfer could have been made.    We said, in granting a new trial :  " The law will regard as transferred to him as such guardian *such part of the property or funds of the estate of said Savage as he held, or had under his immediate control, at the time of his appointment as guardian.*"    It now appears to have been shown at the second trial, that at the time of his appointment as guardian Whitehouse did not have said funds on deposit, as he had claimed, nor under his immediate control, but that before that time he had converted them to his own use ; and that he did not then, or thereafter, transfer or attempt to transfer to himself as guardian any other property which he may have owned in place of that which he had appropriated, or attempt in any manner to pay or discharge the debt or obligation of the adminis-trator to the guardian resulting from his having, as such administrator, misappropriated said funds of the estate ; but it appears that if at any time after his appointment as guardian, Whitehouse could have discharged his debt or obligation to the guardian, by selling some of his Maine property or transferring it to himself as guardian, instead of doing so he mortgaged it to his individual creditors, and permitted them to apppropriate it in satisfaction of their claims against him personally.

The answer of the defendants, that Whitehouse, as ad-ministrator, turned over to himself as guardian the funds

which it is admitted he received from the Savage estate, is
in the nature of a plea of payment, which the facts recited
fail to support.    Those facts show a breach of duty by the
administrator in appropriating to his personal use the funds
of the Savage estate, for which the sureties on the admin-
istrator's bond became liable until the funds so appropriated
were repaid or restored.    Even though they also show that
when Whitehouse was appointed guardian he was not in-
solvent, but owned other property from which he might
have realized sufficient funds to repay the sum he had taken
from the estate, or which he might have transferred to the
minors or to their guardian to take the place of the funds
he had appropriated but which he did not use for that
purpose, they fail to show either an actual transfer of the
funds of the Savage estate from the administrator to the
guardian, or such a constructive transfer of such funds as
will release the administrator's sureties from such liability.
*Potter* v. *Ogden*, 136 N. Y. 384, 391, 33 N. E. 228 ; *State
ex rel. Hospes* v. *Branch*, 134 Mo. 592, 36 S. W. 226.

In support of his contention that the sureties upon the
administrator's bond can only be relieved from liability
upon the ground of a transfer of the assets of the estate
by the administrator to the guardian, by proof that the
former had the funds of the estate in his hands, or in his
immediate control at the time of his appointment as guard-
ian, the plaintiff also cites *Ruffin* v. *Harrison*, 81 N. Car.
208, 212 ; *Taylor* v. *Deblois*, 4 Mason (U. S. C. C.) 135 ;
*State ex rel. Gable* v. *Cheston*, 51 Md. 352, 377 ; *Watkins*
v. *State*, 2 G. & J. (Md.) 220 ; *Bell* v. *The People*, 94 Ill.
230 ; *Karr* v. *Karr*, 6 Dana (Ky.) 3, and *In re Scott's
Account*, 36 Vt. 297.

The defendants cite, among other authorities, *Matter of
Noll*, 10 N. Y. App. Div. 356, 41 N. Y. Supp. 765 ; *Sargent*
v. *Wallis*, 67 Tex. 483, 487, 3 S. W. 721 ; *Gilmer* v. *Baker*,
24 W. Va. 72 ; *Harker* v. *Irick*, 2 Stockton (N. J. Eq.)
269 ; *Adams* v. *Gleaves*, 10 Lea (Tenn.) 367, 384, and
*Fogarty* v. *Ream*, 100 Ill. 366, to the effect that proof of
the solvency of Whitehouse at the time of his appointment

as guardian, and that he at that time. owned other property from which the amount he had appropriated could have been collected, renders the sureties of the guardian's bond liable for the sum in question and so discharges the defendant sureties from further liability.

But it is to be remembered that the question in this case is whether the administrator's sureties are liable, and not whether the guardian's sureties might also be held liable. It was undoubtedly the duty of the guardian to use reasonable diligence to collect the wards' assets. *Pierce* v. *Prescott*, 128 Mass. 140, 146. While acting in the dual capacity of administrator and guardian, Whitehouse possessed in the latter capacity the same power to collect, or cause to be restored, the funds of the estate which as administrator he had misappropriated, as he possessed as administrator or as an individual to pay, or restore, said sum from his private property. It therefore does not follow, because Whitehouse, as guardian, and the sureties upon his guardian's bond, might be held liable for his negligent failure to perform his duties in that capacity, nor because Whitehouse has himself acknowledged his liability as guardian, that these wards are thereby deprived of their remedy against the administrator's sureties, for the act of their principal in appropriating the funds which belonged to them, and for his failure to repay or restore them. *Sargent* v. *Wallis*, 67 Tex. 483, 487, 3 S. W. 721; *Matter of Noll*, 10 N. Y. App. Div. 356, 41 N. Y. Supp. 765; *Harker* v. *Irick*, 2 Stockton (N. J. Eq.) 269.

The defendants' fourth reason of appeal is that "the court erred in charging as follows." Following this are nearly four continuous printed pages from the court's charge to the jury, containing certain general instructions which are clearly unexceptionable, other instructions which are clearly in compliance with the defendants' written requests, and some which are complained of in defendants' brief. That this is an improper assignment of error in the instruction given by the court to the jury, has been repeatedly and quite recently stated by this court. *Anderson* v.

*Husted,* 79 Conn. 535, 540, 66 Atl. 7; *Chase* v. *Waterbury Savings Bank,* 77 Conn. 295, 299, 59 Atl. 37; *Hayden* v. *Fair Haven & W. R. Co.,* 76 Conn. 355, 365, 56 Atl. 613; *Simmonds* v. *Holmes,* 61 Conn. 1, 9, 23 Atl. 702.

The sixth reason of appeal is that the court erred " in rejecting the testimony of Richard F. Skelton, as stated in the finding." The finding shows three separate rulings rejecting different questions asked of this witness, to each of which a separate exception was taken by defendants, but one of which is complained of in their brief. This assignment is an improper one, because it fails to point out the particular error complained of.

The defendants offered in evidence the guardian's account filed by Whitehouse in the Court of Probate in Maine in May, 1899, as conclusive proof, and if not conclusive, as tending to prove, that he held said funds of the Savage estate as guardian, and as proving that he charged himself with the same as guardian. The trial court admitted it as a statement by him that he held the funds as guardian, but not as conclusive proof of that fact, and as tending to contradict the deposition of Whitehouse, which apparently had been offered by the plaintiff. The finding states that the court " refused to admit it as tending to prove that he [Whitehouse] did hold the estate as guardian, except so far as it tended to contradict the deposition made by said Whitehouse."

As there was no evidence that the Court of Probate of Maine had ever taken any action regarding this account, the evidence offered amounted only to a written statement of Whitehouse, under oath, that he held the funds as guardian, in contradiction, apparently, of his statement in his deposition that he did not so hold them. As such evidence the court admitted it. By the statement that he " refused to admit it as tending to prove that he did hold the estate as guardian, except so far as it tended to contradict the deposition," etc., it was evidently meant that it was admitted as evidence upon the question of fact of whether the funds were transferred to him as guardian,

but not as evidence which showed a transfer in law if there was none in fact. That this is the meaning of the language of the ruling is borne out by the language of the charge. In speaking of the filing of this account by Whitehouse, the court said to the jury : " And, further, . . . you may take his action in that particular, and his oath to that account, if it was sworn to, in connection with his deposition read in this court, in determining what the fact is in regard to his transfer of the property held by him as administrator to himself as guardian."

There is no error.

In this opinion the judges concurred.