AMERICAN INDEMNITY CO. et al. v. ENSON.

No. 2496.

Court of Civil Appeals of Texas.
Tenth District.

March 11, 1943.

Rehearing Denied April 29, 1943.

Nat Harris, of Waco, and Bartlett, Carter & Carter, of Marlin, for appellants.

E. M. Dodson and Cecil R. Glass, of Marlin, for appellee.

HALE, Justice.

Annie Enson, suing by next friend, sought in this suit to set aside a release signed by her and to recover $4,000 and interest from American Indemnity Company and American Surety Company of New York as successive sureties on the bonds of her deceased guardian, G. Preusse. In the year 1919 Preusse executed seven notes, each in the sum of $1,000, payable to the order of plaintiff's mother. In 1920 the mother placed four of these notes and the proceeds to be derived therefrom in charge of Preusse as trustee for the use and benefit of plaintiff and herself. The release, dated June 24, 1938, was executed in connection with a deed of even date by which Preusse conveyed 25 acres of land to plaintiff. The jury found on special issues that plaintiff, at the time she signed the release, did not have sufficient mental capacity to execute such instrument; the value of the 25 acres conveyed was $30 per acre at the time of the conveyance; G. Preusse never paid plaintiff any money on his indebtedness to her; and at the time when W. T. Goode executed the bond in controversy for American Surety Company, he was authorized by said company to execute said bond. The court rendered judgment setting aside the release and awarding to plaintiff a joint and several recovery against both defendants in the amount sued for, less a credit for the found value of the 25 acres. Both defendants have appealed.

In separate briefs and by appropriate assignments, each appellant contends that the trial court should have granted its timely request for a peremptory instruction upon the ground, among others, that there was no evidence showing a devastavit or breach of the condition of its bond during the term thereof. Each appellant also complains of the joint judgment rendered against both, it being the contention of each that the liability, if any, of either is several from the liability, if any, of the other. Appellee contends, on the other hand, that since the guardian was individually indebted to the ward at the time he qualified as such, it became his duty as guardian to collect from himself individually the amount of his indebtedness to the ward, and as he could not sue himself, it should be conclusively presumed in law that he collected said indebtedness as guardian so as to render him and the sureties on his bond liable therefor; and that, since the last account filed by the guardian showed the ward's estate to be intact, since the ward was never paid, and since there was no evidence showing the condition of the estate at the time the second bond was filed, the surety on the first bond became jointly liable with the surety on the second bond for the full amount due the ward. Hence it becomes necessary to determine, in the light of the applicable law and the evidence adduced, what duties G. Preusse owed in his individual and fiduciary capacities, respectively, to those with whom he dealt, and whether he violated any duty which he owed as guardian to his ward.

Article 4168, Vernon's Tex.Civ. Stats., requires the guardian to use due diligence to collect all claims or debts owing

to the ward and provides that if he neglects to use diligence in that regard, he and the sureties on his bond shall be liable for all damages occasioned by such neglect. The Supreme Court announced the rule in the early case of Townsend v. Munger, 9 Tex. 300, that "an executor or administrator shall not be charged with any other goods, as assets, than those which come to his hands"; and that one administering an estate is not chargeable with a note in his hands as assets of the estate until such note is actually collected, unless he makes himself so chargeable by some act of negligence or fraud. In Sargent v. Wallis, 67 Tex. 483, 3 S.W. 721, it is said that if a person appointed executor, administrator or guardian be a debtor at the time of his appointment to the estate of which he is made the representative, he must, in legal contempla tion, be considered to have paid the debt to himself, and to continuously hold the money, so long as his representative character continues, and both he and the sureties on his bond are answerable therefor as for money actually received. Again, in American Surety Co. v. Norton, Tex.Com.App., 238 S.W. 1111, the court, in construing applicable statutes, held that an executor or administrator is liable for his debt owed to the estate which he represents as though the amount thereof came into his hands in cash if maturity of the debt is after the time of receiving letters. However, if such debt was due at the time of receiving letters, he is still individually liable, but is not liable in his fiduciary capacity, unless his failure to pay such debt is due to some character of neglect in his representative capacity.

Annie Enson was born February 14, 1917. She and her mother, Miss Mathilda Seidelman, lived in the Preusse home from March, 1917, until the year 1922. Miss Seidelman was a niece of Mrs. Preusse. There was evidence that in the fall of 1919 Miss Seidelman loaned $7,000 to G. Preusse which he used in paying off an indebtedness on 200 acres of land upon which he lived and for which he executed seven notes bearing interest at five per cent per annum and maturing one each year thereafter. On August 2, 1920, Miss Seidelman executed a written instrument, hereafter referred to as the trust indenture, reciting therein the existence of said notes, her desire that the first two and the last two of the series be the property of her daughter, Annie, and to that end she transferred her interest in said notes, placing them in charge of G.

Preusse, in trust, for the use and benefit of Annie, upon condition "that the proceeds and interest of said notes shall be used for the purpose of providing the said Annie Enson with necessary clothes, food and expenses of schooling, and other necessary requirements, until she shall become of age, or shall marry before her majority, in which of either events the remainder of the said four notes shall be paid over to her. Should the said Annie Enson die before reaching her majority, the balance of the proceeds of said four notes shall be paid to me, the said Mathilda Seidelman, or my heirs." Preusse thereafter paid off the remaining three notes retained by Miss Seidelman.

Shortly after the marriage of Miss Seidelman to Fred McLaren in 1925, she and her husband instituted a habeas corpus proceeding in the District Court of Falls County seeking to secure the possession of Annie from the Preusses. In the order of the court denying the custody of the child to Mr. and Mrs. McLaren, it was decreed that G. Preusse should attempt to have himself appointed guardian of the minor. Thereupon Preusse made application to the Probate Court of Falls County for appoint ment as guardian of the person and estate of Annie and, such appointment having been made, he filed his bond in the sum of $8,000 with American Indemnity Company as surety, conditioned that he would faithfully discharge the duties of such guardian according to law. The bond was approved on March 31, 1927. Mrs. Preusse died in 1928. G. Preusse filed two reports in the guardianship proceeding, one on January 8, 1929 covering the year ending December 15, 1928, and the other on April 28, 1931 covering the years 1929 and 1930, in each of which he listed the receipt of $240 per year as interest on notes in the principal sum of $4,000 at six per cent per annum and the expenditure of an equal amount for maintenance, clothing and education of said minor. There was evidence that he executed a will on August 16, 1930, by the terms of which he directed that his just debts be paid "including a $4000.00 note to Annie Enson" and "subject to the note of $4000.00 due Annie Enson" he devised his property to his children. It appears that sometime about the year 1931 he sold 75 acres off of his farm.

On August 14, 1933, the Probate Court entered an order in compliance with law granting the petition of American Indemnity Company to be discharged from all

liability for future acts of the guardian, directing Preusse to file a new bond and decreeing that upon the filing and approval of the new bond American Indemnity Company should be discharged from all liability for the future acts of such guardian. On October 7, 1933, Preusse filed a new bond as guardian in the sum of $8,000 with "American Surety Company of New York by W. T. Goode, Attorney-in-Fact" as surety, conditioned that the guardian would faithfully discharge his duties as such according to law, whereupon the Probate Court immediately entered its order approving the new bond, discharging American Indemnity Company as surety and relieving it from further obligation. In his application to American Surety Company for the foregoing bond, Preusse represented that the estate of his ward consisted of "note made by applicant for $4000.00 collected from the estate of his ward's parents and personal note made protected by will of applicant to be paid out of estate of applicant."

The evidence shows that Annie lived in the Preusse home continuously from the year of her birth until after she became twenty-one years of age, and during that time Preusse provided her clothes, food, schooling and other necessary requirements. On June 24, 1938, Preusse executed a warranty deed conveying to Annie 25 acres off of his farm and at the same time she executed an instrument in writing reciting, in substance, that whereas she had reached her majority and G. Preusse had paid over to her in money and property all sums due her by him as guardian of her estate, she thereby acknowledged full and final settlement with him and released him and the sureties on his bond as guardian from any and all claims existing in her favor by reason of said guardianship proceeding. Annie then went to Houston, Texas, to live with her mother who, in the meantime, had married again to P. J. Flor. On December 19, 1940, Mrs. Flor filed a lunacy charge in Houston against Annie and the latter was thereafter adjudged to be of unsound mind and was committed to the State Asylum for the Insane at Austin. On March 31, 1941, Preusse sold and conveyed the remaining 100 acres of his farm, made disposition of the proceeds among his children, and on May 21, 1941 he died insolvent. This suit was instituted on July 10, 1941 by Mrs. Flor, joined pro forma by her husband, as next friend.

██ It is thus apparent that Preusse acted in three separate capacities during the period of time material to this suit, viz.: (1) as an individual debtor; (2) as trustee under the trust indenture; and (3) as guardian of the estate of Annie. He was individually indebted to the mother from 1919 until August 2, 1920, as evidenced by his seven notes. Thereafter, he was individually indebted to himself as trustee for the use and benefit of Annie and her mother from August 2, 1920 until his indebtedness evidenced by the four notes was discharged, if ever. We think reasonable minds may not differ in concluding from the evidence as a whole that Preusse never did actually pay off any of the four notes in money to himself, either as trustee or as guardian. The only property he ever owned was the land upon which he lived and made his home. Since the four notes were each past due at the time when he was first appointed guardian, and since there was neither pleading nor proof that his failure to pay such notes was due to any neglect or fraud on his part in his capacity as guardian, we are of the opinion that the sureties on his bond never became liable for the debt evidenced by such notes. American Surety Co. v. Norton, supra.

██ But if it be assumed at law, in equity, or in fact, that Preusse did pay off his individual indebtedness as evidenced by any or all of the four notes, then is the evidence sufficient to raise or support a legal inference that the proceeds therefrom were paid, or should have been paid, to himself in his capacity as guardian? We think not. As trustee under the trust indenture, it was his lawful duty to hold the notes or proceeds derived therefrom in trust and make disposition thereof only in the manner therein provided. 42 Tex.Jur., pp. 623 and 631, and authorities. Regardless of who the guardian of Annie's estate might have been, such guardian would not have been entitled to collect from Preusse individually or as trustee the proceeds from said notes, except so much thereof as might have been reasonably necessary to provide Annie with clothes, food, expenses of schooling and other necessary requirements during her minority. McNeill v. St. Aubin, Tex.Civ.App., 209 S.W. 781. The evidence shows that Preusse did provide these necessary requirements. Consequently, if he failed individually or as trustee to account to Annie, after she attained to her majority, for the proceeds which might have been due to her under the trust indenture, such failure would not constitute a breach of the condition of either of his bonds as

636

guardian. We are therefore forced to the conclusion that no devastavit was shown under either bond sued upon. Ward v. Maryland Casualty Co., Tex.Com.App., 166 S.W.2d 117; National Surety Co. v. Hemphill, Tex.Civ.App., 13 S.W.2d 921, point 6 (error refused.)

While the continuing circumstances attendant upon the unfortunate existence of appellee are such as to excite the deepest human sympathy, and to arouse the keenest anxiety for the full and complete protection of her legal rights, yet the courts cannot properly insert in the bonds of her deceased guardian a condition which neither contained, nor impose a liability upon either of the appellants which is not imposed upon them by law.

If we are correct in the views which we have expressed, then the other questions presented on the appeal become immaterial and need not be considered. It appears that all available evidence has been fully developed. It necessarily follows from what we have said that the judgment appealed from is reversed and judgment is here rendered for both appellants.