Argued at Pendleton October 28; affirmed December 15, 1931;
rehearing denied February 9, 1932

In re Kincaid's Guardianship

SMITH et al. *v.* UNITED STATES FIDELITY AND
GUARANTY CO. OF BALTIMORE, MD.

(6 P. (2d) 212)

*Colon R. Eberhard,* of La Grande (Cochran & Eberhard, of La Grande, and Horace W. B. Smith, of San Fràncisco, Cal., on the brief), for appellant.

*Hugh E. Brady,* of La Grande (Lloyd C. White, of San Francisco, Cal., on the brief), for respondents.

BEAN, C. J. It appears from the record that Dorothy Maxine Kincaid was born July 24, 1908, and Irene Estelle Kincaid was born February 18, 1910, and the mother died in 1917. October 4, 1919, letters of guardianship were issued to Willis M. Kincaid by the county court of Jackson county, Wisconsin. In that court Kincaid filed two bonds, one for $500 and one for $3,000. Authenticated copies of the Wisconsin letters of guardianship were filed in the county court of Union county, Oregon, October 4, 1919, and sale proceedings covering the wards' lands in Union county, inherited from their mother Lottie M. Kincaid, the divorced wife of Willis M. Kincaid, were thereafter had. June 23, 1921, Kincaid filed his petition to sell the lots belonging to the wards in Union county, Oregon, and in connection with this sale executed a bond with the United States Fidelity & Guaranty Company of Baltimore, Maryland, as surety, for $3,000, which was filed on June 27, 1921, and approved the same date. The bond is set out in full in the record. By separate sales on August 27, 1921, and July 15, 1922, the lots were sold to Charles Deforest. Reports of the sale were made to the court and the sale was confirmed and cost of commissions and abstracts allowed by the court. No further report was made to the county court of Union county or filed by Kincaid until January 2, 1931, when on petition of the wards, now of age and married, the surety filed a final report and accounting showing the total receipts, $3,407.50, with disbursements of $517.23, and a balance of $2,890.27. This sum was sent to Kincaid in Wisconsin by those attending to the sale for him.

On January 15, 1924, Kincaid filed in the Wisconsin court a report, from the day of his appointment to the first day of January, 1924, charging himself with

$2,891.27, to be accounted for. He there reported that the real estate situated in Oregon had been sold and the net proceeds, in the sum of $2,890.27, remitted to himself, the guardian, in the Wisconsin court and cause. The report shows the domicile of the wards was in Wisconsin until the fall of 1923, when the family moved to California. The wards resided in La Grande, Oregon, for about a year and a half or two years in 1913 and 1914. The wards resided in Oregon at no time during the guardianship.

The surety in the final account to the Oregon court included detailed statements of cash received and amounts paid out on the sales of the Union county lots and prayed for the approval of the report and the allowance of the claims for the disbursements and the transfer of the balance made to Kincaid in Wisconsin. On objections to the final account by the wards, the county court of Union county heard the matter and sustained the objections and held the surety company liable and made an order of distribution based on the petition filed with the objections to the final account. The surety appealed to the circuit court.

Section 11-1414, Oregon Code 1930, provides:

"When any minor, * * * residing out of this state shall be put under guardianship in the state or county in which he resides, and shall have no guardian appointed in this state, the foreign guardian may file an authenticated copy of his appointment in the county court of any county in which there may be real estate of the ward; after which he may be licensed by the county court for the same county to sell the real estate of the ward in any county in the same manner and upon the same terms and conditions as are prescribed in this chapter in the case of a guardian appointed in this state, except in the particulars hereinafter mentioned."

Section 11-1415 provides:

"Every foreign guardian so licensed to sell real estate shall take and subscribe the oath in the like case of guardians appointed in this state, and shall give notice of the time and place of sale, and conduct the same in the same manner prescribed for guardians appointed in this state, and may perpetuate the evidence of the notice in the same manner."

Section 11-1416 requires that "All the proceedings required to be had in any county in this state respecting such sale by a foreign guardian shall be had in the court for the county in which the authenticated copy of his appointment is filed."

The manner and disposition of the proceeds of real estate so sold is provided in section 11-1417, as follows:

"Upon every such sale by a foreign guardian, the proceeds of sale, or as much thereof as may remain upon the final settlement of the accounts of guardianship, shall be considered as real estate of the ward, and shall be disposed of among the same persons and in the same proportions as the real estate would have been according to the laws of this state if it had not been sold; and the foreign guardian shall, in every case, before making the sale, give bond to the county judge, with sufficient surety or sureties, with condition to account for and dispose of the same according to law."

The surety company assigns as error that the circuit court erred in affirming the decree of the county court and in not giving credit for the proceeds of the sale of the land which were sent to the guardian in Wisconsin, and in not approving the final account.

■ In considering this question we start with the premise that when a foreign guardian makes an application for a license from a county court of this state

to sell real estate of his wards situated in this state, under section 11-1414, in such proceedings he should be governed by the laws of this state, which he has so invoked.

■ The obligation of the sureties on a guardianship bond will be measured and determined by the bond. The bond will be construed with reference to, and read in the light of the law in force when and where it was given: 28 C. J. 1285, § 480.

The bond in question was given by Kincaid and his surety to the county judge of Union county, Oregon, and bound the guardian to sell the real estate of said minors in the manner provided by law in this state for the sale of real estate by guardians. This appears to have been done. The bond further provides that the guardian should "account for and distribute the proceeds of the sale in the manner provided by law." The law directing the manner of disposal of the proceeds of such a sale of real property is found in section 14-1417, Oregon Code 1930, above quoted. The same provision, in effect, is found with regard to the residue of a sale by regular guardian in section 11-1405, Oregon Code 1930. The statute requires that on the final settlement of the account of the guardianship the net proceeds of the sale should be disposed of the same as the real estate would have been if it had not been sold, which would have been in equal shares to the said minors as heirs of Lottie M. Kincaid, deceased. This was, in effect, ordered by the county court of Union county to be done by the guardian. The order was properly made and affirmed by the circuit court.

After the receipt of the proceeds of the sale and the confirmation of the sale, nothing appears to have been done in the county court of Union county, Oregon, until after December 2, 1930, when Dorothy Max-

ine Kincaid Smith, Jr., and Irene Estelle Kincaid Astley filed a petition to require a final account by the guardian. A citation was issued to the United States Fidelity & Guaranty Company and C. O. Price, its attorney in fact, requiring cause to be shown why a final account should not be filed. Within the time allowed Willis M. Kincaid, the guardian of the minors, by the United States Fidelity & Guaranty Company of Baltimore, Maryland, his surety, filed his final report and accounting showing in detail the different sales of the lots, the expenses and that the net proceeds were received at different dates by those acting for the guardian, and as the payments for the lots became due and were collected, they were remitted to Willis M. Kincaid, the guardian, in Wisconsin. This in reality was the first reception of the proceeds, $2,890.27, by the guardian, the transmissions being on and between September 7, 1921, and January 5, 1923. It is not shown that there was ever any legal transfer from Kincaid, as foreign guardian in Oregon, to Kincaid, as the general guardian in Wisconsin. After Kincaid left the state of Wisconsin and moved to California he, as guardian, filed in the Wisconsin court an annual account from the day of appointment in Wisconsin to the first day of January, 1924, showing that he had on hand January 1, 1924, $2,891.27; that the real estate situated in Oregon, described in the inventory, was sold and the sum on hand was the net proceeds.

It is contended by the appellant surety company, in effect, that the transfer, acknowledgment and receipt for the proceeds of the sale of the real estate in Oregon by the guardian Kincaid in Wisconsin, released him and his surety from all liability on the bond given to the county judge of Union county, Oregon, for an accounting of the proceeds of the land sale; that the

Wisconsin guardianship proceedings were the principal or domiciliary ones and the county court's proceedings in Union county were the ancillary ones. Citing 28 C. J. 1070, and other authorities.

■ It is unnecessary in this case to determine whether the sureties on the guardianship bond in Wisconsin are liable, although the Wisconsin sureties might be liable. It does not follow that the surety on the bond given in Oregon for the sale of the real estate is not liable nor because the guardian has acknowledged that he is liable in Wisconsin, that the wards are deprived of their remedy upon the bond given as the guardian's for the sale of the real estate in Union county: *State ex rel. v. Whitehouse,* 80 Conn. 111, 122 (67 Atl. 503).

*State ex rel. v. Whitehouse* was an action on a probate bond executed by Eugene W. Whitehouse of Augusta, Maine, as principal, and three residents of the state of Connecticut, as sureties, conditioned upon the faithful performance by Whitehouse of his duties as administrator, appointed by the court of probate of Norwalk county, Connecticut. The action is brought for the benefit of the minors on the relation of Thomas J. Lynch, under his appointment as their guardian by the court of probate of Norwalk. It is alleged that Whitehouse failed to distribute $6,000 which came into his hands as administrator and failed to pay over and deliver the funds and property of said estate to the plaintiff Lynch, as guardian, in accordance with the order of the court of probate of Norwalk. Only the sureties upon the bond defended the action, and, in their answers, among other things, alleged that after the appointment in this state as administrator, March 18, 1897, Whitehouse was, by the court of probate of Augusta, Maine, appointed guardian of said minor children of his intestate Charles W. Savage, and that

on March 10, 1897, he, as such administrator, transferred to himself as guardian all of the funds and property of the estate of Charles W. Savage, and that Whitehouse filed an account with the court of probate of Maine, charging himself as guardian with all of the funds and property claimed by the minors. It was held, in substance, that the statement made by Whitehouse "that he held the funds as guardian" in the state of Maine, while admissible, was not conclusive proof of that fact, and that the sureties on the administrator's bond were liable. There was no evidence that the probate court of Maine had ever taken any action regarding the account of Whitehouse. So, in the case in hand there is no showing that the court in Wisconsin has ever taken any action in regard to the account of Kincaid acknowledging the receipt in Wisconsin of the proceeds of the sale of the Oregon lands.

In *Bellinger v. Thompson,* 26 Or. 321, 339 (37 P. 714), it was held that, where an executor, who is also appointed trustee to convert assets into cash and pay over the proceeds as directed, assumes such duties in the capacity of executor, his sureties, in an action on his bond, can not escape liability by claiming that he was acting as trustee and not as executor, for both he and they are estopped by his conduct from questioning the capacity in which he acted. In that case, former Mr. Chief Justice BEAN said in regard to the discharge of an executor, as shown on page 339, as follows:

"A mere order of final settlement or distribution could not discharge him as executor, or relieve his bondsmen, until the distribution was actually made. This could be done, under the terms of the will, only by paying the balance in his hands to the guardian of the minor children." Citing and quoting from *Foster v. Wise,* 46 Ohio St. 20, (16 N. E. 687, 15 Am. St. Rep. 542).

The answer to the proposition in regard to the disposition of the proceeds of the sale of real estate in the present case is found in section 11-1417, containing the law in regard to such distribution.

Among the cases cited by appellant, and the one nearest in point, we think, is that of *Emery v. Batchelder,* 132 Mass. 452. The syllabus, which shows the ruling, reads:

"If a person residing in this Commonwealth is appointed executor of a will in another state, and ancillary letters testamentary are also granted to him here, and his final account, showing that the balance in his hands has been paid to him as executor under his appointment in the other state, is allowed by the probate court here, this court has no jurisdiction of a bill in equity to construe the will and marshal and distribute the estate."

At page 453 of the report we read as follows:

"Our statutes provide that, where ancillary administration is taken out in this state, upon the settlement of the estate, after the payment of the debts for which it is liable in this state, the residue of the personal estate may be distributed according to the will, 'or in the discretion of the court it may be transmitted to the executor or administrator, if there is any, in the state or county where the deceased had his domicile, to be disposed of according to the laws thereof'."

We have no statute similar to the Massachusetts statute. In lieu thereof we have section 11-1417, Oregon Code 1930, in which entirely different provisions are made from those in the Massachusetts statute.

Mr. Justice Story in *Harvey v. Richards,* 1 Mason 381, Fed. Cas. No. 6184, quoted in *Bedell v. Clark,* 171 Mich. 486 (137 N. W. 627, 630), expressed the rule as follows:

"Where there are two administrations of a single estate, one in the place of the domicile of the testator

or intestate and the other in a foreign jurisdiction, the question whether the courts of the latter will decree distribution of the assets collected under the ancillary administration, or remit to the jurisdiction of the domicile, is not one of jurisdiction, but of judicial discretion, dependent upon the circumstances of the particular case."

In the present case, Kincaid, the foreign guardian, made no application and obtained no order for the distribution of the assets of the estate of the minors. No such order was obtained from the Wisconsin court and no such distribution was ever made.

It is stated in the notes to *Davis v. Hall,* 40 L. R. A. (N. S.), 1136, at page 1137, after mentioning several cases, that "the principle announced in the foregoing cases was qualified by the statement that such a transfer, if made by an insolvent fiduciary, must embrace substantial assets, and that the transfer of a mere naked liability of the first fiduciary would not discharge the sureties on his bond as such."

■ A person holding funds in one fiduciary capacity can not by his own election shift the responsibility therefor from one set of sureties to another: *State v. Elliott,* 157 Mo. 609 (57 S. W. 1087, 80 Am. St. Rep. 643, 647); *State ex rel. v. Branch et al.,* 151 Mo. 637 (52 S. W. 390), which was the fourth appeal. In the latter case we find that where one holds funds as a guardian, he can not, by giving a receipt from himself, as trustee, to himself, as guardian, shift the liability of his sureties, as guardian, to his sureties, as trustee, where there was no transfer of substantial assets.

*Roach's Estate,* 50 Or. 179 (92 P. 118), is authority for the proposition that the evidence of a change in position from executorship to trusteeship should be some affirmative action, such as securing a release

from the probate court and filing a trustee's bond. A mere ceasing to file reports as executor is not sufficient.

In *Poole v. Garrett,* 15 Fed. (2d) 892, cited by the surety company, an ancillary administrator was appointed in the District of Columbia and rendered an account there which was regularly approved and the funds paid to himself as domiciliary administrator in Maryland, after which they were converted by the administrator. It was held that the bond of the ancillary administrator was not liable. The case is not like the one at hand.

■ We recognize the rule, as stated in 24 C. J. 1071, § 2571, which reads as follows: .

"As previously stated the bond of an executor or administrator does not cover property held or acts done by him in some other and distinct capacity. It follows that, where property of the estate is transferred to, and retained by, the representative in another capacity, the sureties on the administration bond are released from further liability with respect thereto. They will not be released, however, unless a transfer has been made and a new liability incurred."

We think, however, in the present case that, by transmitting the proceeds of the sale of the real estate by the agents of the guardian to him in Wisconsin, which was in reality a receipt of the proceeds of the sale by him under the appointment of the county court of Union county, as a foreign guardian, by such transfer there was no new liability incurred by the guardian or his sureties and that this case comes within the exception mentioned in the quotation.

While there are many cases that discuss questions somewhat analogous to the one in hand, each case must be determined according to the facts of that particular

case. The cases herein cited are, we think, somewhat analogous to the case at bar, although not strictly in point.

■ Our statute, section 11-1410, Oregon Code 1930, requires that every guardian licensed to sell real estate, shall, before the sale, give a bond to the county judge conditioned to sell the same in the manner prescribed by the statute "and to account for and dispose of the proceeds of the sale in the manner provided by law." Such a bond, like the bond given by a foreign guardian licensed to sell real estate in Oregon belonging to his wards, is a special bond: 28 C. J., p. 1286.

■ In the present case Kincaid, after he sold the lots of the minors in Oregon and received the proceeds in 1921, 1922 and 1923, did nothing to place the funds received under the control of the Wisconsin court, except that after he had left the state of Wisconsin and went to California he reported to the Wisconsin court that he had on hand to be accounted for the sum of $2,891.27. No action appears to have been taken by that court in regard to the report except to file the same. This was not a compliance by Kincaid with the statute of Oregon, under which he was licensed to sell the real estate, nor with the bond given by him, conditioned that he would sell the real property and "account for and dispose of the proceeds of the sale in the manner provided by law." As stated, that law is the statute of Oregon. He was licensed to make the sale and dispose of the proceeds thereof according to section 11-1417, Oregon Code 1930. Kincaid, the guardian, has never accounted for such proceeds according to law. He has never disposed of the proceeds of the sale in conformity with the statute, nor in any manner paid the same to the wards, who are the rightful heirs

of Lottie M. Kincaid, deceased, formerly the divorced wife of Willis M. Kincaid, nor in any way been discharged from his liability or duty as such guardian, either by the probate court of Oregon or the court of Wisconsin.

The laws of this state do not sanction the licensing of a foreign guardian by a county court of this state, and permitting such guardian to sell the real property of his minor wards, receive the proceeds, never ask the court to order the payment of the funds to the wards or for any disposition of such assets, never render any final account of his transaction and never pay the proceeds of the sale to the wards, to whom they belong. Such a procedure would not conform to law, equity or common justice and right.

That the net proceeds received from such a sale should be paid to the persons who are entitled to the same is the main provision of the statute and the bond given pursuant thereto. The surety on the guardian's bond is liable for the default of the guardian in the matter in which the bond was executed. Before there was any attempt on the part of the guardian or his surety to render an annual or final account in the county court for Union county, the wards were married and became of age, and the money should be paid to them.

The decree of the circuit court is right, and should be affirmed. It is so ordered.

Rossman and Campbell, JJ., did not participate in the consideration of this case.